MARYLAND REPORTS.

Atwell & Appleton, *vs.* Miller.

---

## Richard H. Atwell and Wm. S. Appleton, *vs.* J. Madison Miller, by procein ami.

In order to make the *declarations* of a third person evidence against a plaintiff, on the ground that he was a *partner* with, or the *agent* of, the plaintiff, sufficient proof must first be offered to satisfy the court of the existence of the *partnership* or *agency.*

reight is the compensation for the carriage of goods, and if paid *in advance,* and the goods be not carried, by reason of any event not imputable to the shipper, it is to be *repaid,* unless there be a *special agreement to the contrary.*

The legal operation of the contract contained in a, *bill of lading,* may be modi-

fied by adding thereto a *parol suppletory agreement* that the freight was to be at the risk of the shipper, and such special agreement may be established by *parol* proof.

A party having no interest in freight, cannot *insure it*, and the fact that the *shipper* effected an insurance on freight, is *some evidence* that the contract in the bill of lading had been modified by a special agreement that the freight should be at the *shipper's risk*.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* brought by the appellee against the appellants, to recover the sum of $527.29, with interest, for money paid, in advance, by the plaintiff to the defendants, for freight on goods, contracted to be carried by the defendants from Baltimore to Monrovia, in Liberia. Plea, *non-assumpsit*. The facts of the case are fully stated in the opinion of this court. By an agreement of counsel, it was admitted, that an insurance was effected by the plaintiff on the *cargo* shipped by him in the defendants' vessel, at a valuation of $7500, the value of the goods, as per manifest, being $6195.09.

1*st Exception.* It was proved by the witness, Miller, that Asbury Johns, the consignee named in the bill of lading, was a *colored man;* that plaintiff, some three or four years ago, sent goods to Liberia by Johns, and they were jointly interested in the profits and losses; that these transaction continued, and they made some $3000, which was a part of their capital in the adventure in question; that Johns was here when these goods were bought, and aided in making the selection of them, and went out in the "Harp" with them; that Johns had nothing to do with the goods on this side; the goods were bought with the plaintiff's money; the business was done in the plaintiff's name here, and in Johns' name at Monrovia. Witness has known Johns for some six or eleven years; he was a porter in witness' store until he went to Liberia, in the latter part of 1851; he has been in Baltimore since; he received his own wages, and acted as a free man; but witness does not know whether he was born free or not, or whether he had been manumitted. The defendants then proved by their witness, Smith, that he frequently saw Johns about defendants' counting room, whilst these goods were going on board the Harp,

and that he was attending to their shipment. The defendants' counsel then asked said witness this question: "Did you hear any conversation at or about the time of the shipment, between said Johns and the defendants, or either of them, in relation to the terms on which these goods were to be shipped? and if so, state such conversation fully, and what was said by said Johns." To the asking and answering of this question, the plaintiff objected, which objection the court (PRESSTMAN, J.) sustained, and refused to allow the question to be asked, and to this ruling the defendants excepted.

*2nd Exception.* The plaintiff then proved, by certain insurance officers, that it is sometimes customary, in Baltimore, for insurers to add 10, and sometimes 50, per cent. to the cost of goods, and that such addition is made to cover the expense of putting the goods on board of the vessel. On cross-examination, these witnesses stated, that if freight was paid in advance, and the shipper took the risk of the voyage, the 10 per cent. would cover such freight. The plaintiff then asked the following instructions to the jury:

1st. If the jury find, from the evidence, that the plaintiff shipped the goods, mentioned in the bill of lading, on the brig Harp, from Baltimore to Monrovia, in Liberia, and paid the defendants the freight therefor, in advance, and that the brig sailed on her voyage with the goods on board, and that the defendants did not deliver them at the port of Monrovia, according to the tenor of the bill of lading, and that this failure so to deliver them, arose from no event imputable to the plaintiff, then they may find for the plaintiff, unless they further find that there was a special agreement, at the time of such shipment, between the plaintiff and defendants, that the freight so paid in advance should, in any event, be retained by the defendants.

2nd. That even if they shall find, from the evidence, that the plaintiff insured said freight, such fact is not evidence from which they may infer that the plaintiff paid the freight at his own risk, or the existence of an agreement between plaintiff and defendants, that the freight was, in any event, to be retained by the latter.

3rd. If the jury find, from the evidence, that plaintiff shipped, on board the Harp, the goods mentioned in the bill of lading, and that by said bill of lading it was agreed, that defendants should transport these goods on said brig from Baltimore to Monrovia, and deliver them to the consignee thereof, in consideration of plaintiff's paying freight therefor, and that there was no stipulation in said bill of lading, that the freight should be at the risk of the plaintiff, or be, in any event, retained by the defendants, and that the freight so agreed to be paid in the bill of lading, was paid by the plaintiff in advance, and that the goods were taken on board said brig for transportation, according to the tenor of said bill of lading, and were never delivered by defendants at Monrovia, according to said bill of lading, and that said failure arose from no default of the plaintiff, then they may find for the plaintiff, notwithstanding they may find that defendants refused to take the risk of said freight, or to carry said goods, unless the plaintiff would take said risk, provided they find that said refusal was made by defendants after the making of said bill of lading, and after the goods had been received on board said brig by defendants, for transportation, according to said bill of lading.

The defendants then asked instructions, as follows:

1st. If the jury find, from the evidence, that up to the time of the payment of the money sued for by the plaintiff, the defendants refused to take any risk connected with the freight, and take the goods offered by the plaintiff as cargo, unless the plaintiff would pay in advance for the carriage of such cargo, and take the risk of the voyage being accomplished, and that the plaintiff paid the money so sued for with a knowledge of such refusal, then the plaintiff is not entitled to recover.

2nd. That if the jury find that, in fact, the plaintiff insured the freight paid by him to the defendants, such insurance is evidence from which, taken in connection with the testimony of the witness, Smith, if such testimony is believed by them, the jury are at liberty to infer that there was an agreement between the plaintiff and defendants, that the freight so paid by the former should be at his risk, and should not, in the event of the loss of the brig, by perils of the sea, without delivering

Atwell & Appleton, *vs.* Miller.

her cargo, in pursuance of the bill of lading, be recovered back from the defendants.

The court granted the plaintiff's prayers, and rejected those of the defendants. To this ruling the defendants excepted, and, the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, and BARTOL, J.

*Frederick W. Brune* and *Geo. W. Dobbin* for the appellants, argued:

1st. There is evidence that, from the commencement of the shipment, the contract between the defendants and the plaintiff was, that the freight was to be paid in advance, and that the latter was to be at the risk of the voyage. Such a contract is consistent with the bill of lading as well as the other evidence in the cause: 2 *Bos. & Pul.*, 322, Blakey *vs.* Dixon. 5 *Taunt.*, 435, Andrew *vs.* Moorhouse. 4 Maule. & Selw., 38, De Silvale *vs.* Kendall. 3 *Barn. & Adol.*, 445, Saunders *vs.* Drew. The fact that he insured the freight is evidence of such a contract; for a party who has no interest in the freight cannot insure it; he has no insurable interest: *Parson's Mercantile Law*, 419. 4 *Barn. & Ald.*, 582, *Manfield vs. Maitland.* And, as evidence of such a contract, the defendants were entitled to present to the jury the statements of Johns. They were admissible as part of the *res gestæ,* (6 *Md. Rep.*, 338, *McDowell vs. Goldsmith;* 5 *Md. Rep.*, 219, *Miller & Mayhew, vs. Williamson;* 4 *Md. Rep.*, 305, *Greenway vs. Turner,*) made by a person who was a *partner* with the plaintiff in this very transaction, and his constituted *agent* in regard to the shipment of these goods. It would be strange if, in such a case as this, these declarations and statements are to be excluded merely because they were made by a *colored person.* It does not seem to be a case which comes within the policy of the act of 1717, ch. 13.

2nd. If such a contract was not originally made, it was competent for the parties to *substitute* it in place of the original contract. There is evidence that the rate of freight stipu-

lated in the bill of lading, was, by a valid aregement, *reduced,* and that it was part of this agreement, that the freight to be paid should be at the risk of the shipper, and should be insured by him.　This modification of the original contract, is recognized in the written receipt given when the money was paid, as well as supported by other evidence, and if under this substituted agreement, the vessel proceeded with the goods to the coast of Africa, and there delivered a portion of them to the consignee of the shipper, the plaintiff was not entitled to recover.　5 *Md. Rep.*, 121, *Coates & Glenn, vs. Sangston.* 2 *Parson's on Contract,* 67.

3rd. If the defendants constantly refused to carry the plaintiff's goods, unless he paid the freight in advance and took the risk of the voyage being accomplished, and if the plaintiff paid the freight with knowledge of such refusal, he was not entitled to recover.　4 *Gill,* 425, *Mayor & C. C. of Balto., vs. Lefferman.*　5 *Gill,* 248, *Morris vs. Mayor & C. C. of Balto.*

4th. Even if the goods were put on board and the bill of lading signed, under a misunderstanding between the parties in regard to some of the terms of the contract of affreightment, yet, if before the freight money was paid or the vessel sailed, the plaintiff ascertained this mistake, and the defendants refused to take the goods forward without payment of freight in advance, which was in no event to be returned, and the plaintiff after notice of this refusal and understanding on the part of the defendants, obtained a reduction of the freight and then paid the money, and suffered the vessel to go upon the voyage, such payment cannot be recovered back in this action.

*Charles Marshall* and *H. C. Dallam* for the appellee.

1st. The conversations of Johns with the defendants were clearly inadmissible:—1st. They could not be admitted, on the ground that Johns and the plaintiff were *partners,* for the evidence so far from proving that this was a partnership contract, proves exactly the reverse, and is wholly insufficient to establish the relation of partnership, so as to make Johns' declarations admissible.　1 *Parsons on Contracts,* 146.　2nd.

There was no sufficient proof that Johns was *free*, and capable of forming the contract of partnership in Maryland, and the *onus* of proving him free was on the defendants, the presumption in this State being the other way. 6 *G. & J.*, 141, *Burke vs. Negro Joe*. 9 *Gill*, 135, *Anderson vs. Garrett*. 4 *H. & J.*, 243, *Walls vs. Helmsley*. 3rd. He is proved to be a *negro*, and his declarations were inadmissible in a suit between white persons. *Act of* 1717, *ch*. 13. 3 *H. & J.*, 97, *Rusk vs. Sowerwine*. The policy of this law extends to the declarations or conversations of negroes as well as to their testimony. The protection of this law should be extended fully to the citizen, because the policy of our laws keeps the black race in such a condition as to make them unfit, in a great measure, to be entrusted with any power over the rights of the superior race. 4th. This testimony was inadmissible, because the defendants could not prove or rely upon a contract different from the one they, by the statement of facts, agreed to by them, had *admitted* to exist, viz., a contract with the plaintiff *alone*. 5th. Whatever Johns, or even the plaintiff, may have said concerning the "terms of shipment," at or about the time of shipment, was *merged* in the written contract set out in the *bill of lading*, fully and explicitly stating the terms of shipment, and to which alone we can look for those terms which could not be proved by *parol*, while there was a written contract. If the testimony was inadmissible on this ground, it was properly rejected though unobjectionable in other respects. 3 *G. & J.*, 435, *Sothoron vs. Weems*.

2nd. The plaintiff's first prayer is based upon the principle of law, that "freight is the compensation for the carriage of goods, and if it be paid in advance, and the goods be not carried by reason of any event not imputable to the shipper, it is to be repaid, unless there be a special agreement to the contrary," which is clearly sustained by the authorities. 3 *Pick.*, 20, *Griggs vs. Austin*. 3 *Johns.*, 335, *Watson vs. Duykinck*. 1 *Pet. Admiralty Rep.*, 126, *Howland vs. Brig Lavinia*. 3 *Sumner*, 66, *Pitman vs. Hooper*. 1 *Camp.*, 84, *Massiter vs. Buller*. *Smith's Mercantile Law*, 299. 5

*Sanford,* 578, *Phelps vs. Williamson. Chitty on Contracts,* 661, 662, 663, *note* 3. *Abbott on Shipping,* 496, 497, 501. 3 *Kent,* 286, 287. 6 *H. & J.,* 401, *Ferguson vs. Cappeau.* If there was any special agreement, that the freight was in any event to be retained by the defendants, it must be found in *the bill of lading,* and cannot be supplied by parol evidence. A bill of lading, so far as it is not a *mere receipt* but a *contract,* cannot be modified by parol evidence; the liability of the owner is fixed by it, subject to such exceptions as it contains. *Flanders on Shipping, sec.* 479. 6 *H. & J.,* 401, *Ferguson vs. Cappeau.* 4 *Ohio,* 334, *May vs. Babcock.* 14 *Wend.,* 26, *Creery vs. Holly.* 4 *Denio.,* 330, *Covill vs. Hill.* 1 *H. Bl.* 359, *Mason vs. Lickbarrow.* 3 *Sandford,* 7, *Wolfe vs. Myers.* 8 *Burb.,* 205, *Niles vs. Culver.* 17 *Mass.,* 570, *Brigham vs. Rogers.* 4 *Maule. & Selw.,* 41, *De Silvale vs. Kendall.* Even a *receipt,* when it *amounts to a contract,* is subject strictly to the rule, excluding parol testimony to change or vary it. 12 *Pick.,* 562, *Wakefield vs. Stedman.* 15 *Pick.,* 437, *Curtis vs. Wakefield.* 1 *Blackf.,* 191, *Adam vs. Beard. Ibid.,* 353, *Tisloe vs. Graeter.* 6 *Ohio,* 246, *Stone vs. Vance.* 7 *G. & J.,* 415, *Franklin, et al., vs. Long.* 4 *Hill.,* 104, *Goodyear vs. Ogden, et al,* 2 *Parsons on Contracts,* 67. 6 *Barb.,* 458, *Egleston vs. Knickerbacker.* 9 *Barb.,* 477, *Graves vs. Harwood.* 34 *Maine,* 559, *O'Brien vs. Gilchrist.* It is submitted therefore, that the bill of lading and receipt, according to the tenor and effect of which the money sued for in this case is *admitted by the agreement of counsel* to have been paid, constitute the *final written* contract between the parties, and that no *parol evidence* could be used to modify or vary it.

3rd. The defendants rely upon the evidence of Smith of conversations between the agent of the plaintiff and Atwell, as to who should take the risk of the freight, and especially upon the refusal of the defendants (which is supposed to be proved) to take the goods unless the plaintiff would consent to pay the freight at his own risk, as proving the existence of an agreement on the part of the plaintiff, to assume risks which he had not assumed by the terms of his written contract. It

is to be noted in the first place, that all the testimony of Smith, as to what was said about the plaintiff's having to take the risk of the freight, and to insure the freight, is perfectly consistent with the terms of the bill of lading, for by these terms, the plaintiff did assume the risk of the goods *after* they left the vessel's side, and were delivered to the kroomen to be carried to the shore. But these declarations, as well as the refusal of the defendants to take the goods unless the plaintiff would assume the risk of the freight, if made *before* the execution of the bill of lading were certainly *merged* in it, and if *after,* they could not vary the contract and add a general exception of *all* risks to it, especially when there is no proof that the plaintiff assented to vary the written contract in this particular, that was the subject of these declarations. 3 *Md. Rep.,* 78, *Stewart vs. Redditt. Ibid.,* 212, *Glenn vs. Grover, et al.* Moreover the money was actually paid and the receipt given for it on the 12th of June, and still there is no trace of such a modification in the terms in the bill of lading as is contended for by the appellants.

4th. Neither could the jury infer from the fact of insurance of freight by the plaintiff, that he had assumed any risk not mentioned in the bill of lading, because he had no insurable interest against any peril that remained at the risk of the owner by the bill of lading. 1 *Hall,* 452, *Mellen, et al., vs. National Ins. Co.* 1 *Phillips on Ins., ch.* 3, *secs.* 337, 340. 5 *Scott,* 640, *Yates vs. White.* 16 *Pick.,* 289, *Clark vs. Ocean Ins. Co.* He had an insurable interest in the freight, by reason of the provision, that the defendants were to deliver the goods to the consignee, to be carried *on shore,* and if the goods had been lost *in transitu* from the ship to the shore, the defendants would certainly have earned freight; this was a sufficient risk to justify the plaintiff in insuring his interest in the whole freight, *Phillips on Ins.,* 140. But there is no evidence that he insured freight at all; the policies are on *cargo* only, and did not cover freight, or such an interest in the freight as the plaintiff would have had if he had taken the risk of the freight. It must have been insured *eo nomine,* or as freight advanced. 1 *Phillips on Ins., ch.* 5, *secs.* 415, 482. *Smith's Mercantile Law,* 331.

If these positions are correct, there was no error in the several rulings of the court below, and the judgment must be affirmed.

Le Grand, C. J., delivered the opinion of this court.

This action was brought by the appellee to recover of the appellants the sum of $527.29, with interest, for money paid, in advance, by the appellee to the appellants, for freight on goods contracted to be carried by the appellants from Baltimore to Monrovia, Liberia.   By the agreement of counsel filed in the cause, it appears that the goods upon which the freight was paid in advance, were shipped on board the appellants' vessel (the brig "Harp,") according to the tenor and effect of the bill of lading, dated 9th of June 1854, and that the vessel having the goods on board sailed on the 13th of June of the same year; that it was shipwrecked in the Messurado Roads, occasioning thereby, a loss of a part of the goods and damage to the remainder.

The question presented to the court below may be thus stated: first, whether the declarations of a person, he being a negro, can be given in evidence where a white person is interested ? second, whether under the circumstances detailed in proof, the plaintiff below was entitled to recover the money which had been paid in advance?

The proof shows, that in the month of May 1854, the appellants, who were the owners of the brig Harp, were loading her for the coast of Africa, and were applied to by the appellee, in regard to the rate of freight by said vessel.   To this application reply was made, "that the current rates to Monrovia were $2 per barrel, measuring five feet, or in other words 40 cts. per foot cubic."   Sometime after this, the appellee put on board the Harp a quantity of cargo, measuring in all 13.529 cubic feet, according to the receipt for the same, The bill of lading stated, that this cargo was shipped by the appellee and was to be delivered at Monrovia, (the dangers of the sea excepted,) to one Asbury F. Johns, or assigns, "the shipper paying freight for the said goods at the rate of 40 cts. per cubic foot, with five per cent. primage, and average ac-

customed;" and it was further stipulated that the goods should "be delivered at ship's tackle, vessel paying kroomen's labor taking them to shore, but goods at risk of owners thereof after leaving vessel, boats for landing furnished and controlled by owners of goods." The bill of *lading* was signed by the captain, on or about the 9th of June 1854. A *bill* of freight, dated the 8th of June 1854, was presented to the appellee. The amount of this bill was $570.95, and was for 13.529 cubic feet of cargo, at 40 cts. per foot, $541.10, wharfage hire, $5.40, primage $27.32, less 30 days' interest $2.87. This bill was not paid until the 12th of June, nor until after a deduction of $43.66, which is stated in the receipt to be as "per agreement," leaving a balance of $527.29, the sum sued for and recovered below. At the trial the appellants by their clerk, the witness Smith, proved that, on the 10th of June, the appellee came with his father, (who was acting for him in reference to the shipment,) to the counting-house of appellants, both of whom were present, and that then the appellee objected to the measurement and to the charge for primage, and said, "he ought to be allowed a deduction (in the freight bill) *because he had to take the risk of the freight money himself;*" that Atwell then said *"he would take no risk, it was at the parties own risk; that he would not insure the freight, and that if they, (the appellee and his father,) were not satisfied with the terms he would rather set the goods on the wharf.*" The same witness further testified, that during the same interview and in the same presence, and before the freight was paid, that "Miller did not ask security for return of freight money in the case the vessel was (were) lost," and that Atwell stated, that *"he would not return the freight if the vessel was (were) lost."* The witness also testified, that Miller, the father of the appellee, said, that as he had *insurance money* to pay, he thought the bill unfair. It was in addition stated by the witness, that on the ascertainment of the loss, application was made for the return of the freight money, whereupon Atwell asked Miller, if he did not understand that he, (the appellee,) took the risk, and if he had not insured? to which the appellee, without denying that he had taken the risk, admitted "that he had in-

sured and had added 10 per cent., as was customary." It was proven by Daniel Miller, that the deduction of $43.66, per agreement from the bill of appellants, was made by the appellant, Appleton, with the witness.

It was then shown that a colored man, of the name of Johns, had been associated in trade with the appellee, he transacting the business in Africa, the shipments being to him; that he selected a portion of the goods which made up this cargo, and was frequently attending to the shipment. The appellants then proposed the following question to the witness, which the court refused to allow to be put:—"Whether he heard any conversation, at or about the time of the shipment, between the said Johns and the appellants, or either of them, in relation to the terms on which these goods were to be shipped?" To the refusal of the court to allow the question to be answered, the appellants objected, and this objection constitutes their first exception.

We presume this question was asked on the ground of one or the other of two theories; that is to say, that Johns was a partner of the plaintiff in the particular shipment, the subject of investigation in this case, or that he was the authorised agent of the plaintiff in the transaction, and as such, capable of binding him, in and about the business, by his declarations. There is not sufficient evidence of the existence of a partnership in regard to this affreightment, to justify his declarations being given in evidence to defeat the action, because of nonjoinder of the proper parties, nor is there evidence sufficient to show an agency. Until one of these propositions was first settled to the satisfaction of the court, the testimony was inadmissible. This view relieves us from all necessity of inquiring, whether the color of the party, whose declarations were proposed to be given in evidence, could have a *legal* bearing on the question in any event? The court properly disallowed the question.

On the conclusion of the testimony the appellee asked three, and the appellants two, instructions from the court to the jury. Those asked for by the appellee were granted, and the others refused.

We will state the principles which, in our opinion, govern this case, and then apply them to the prayers severally.

There is some difference between the law as laid down by the English, and as recognised by the courts of this country. We adopt the decisions of our own courts, as more conformable to the principles of common law and of justice. In the case of *Griggs, et al., vs. Austin*, 3 *Pickering*, Judge Parker, in delivering the opinion of the court, after referring to the complete review of Chief Justice Kent, in the case of *Watson vs. Duykinck*, 3 *Johns. Rep.*, 355, proceeds as follows: "It would be but an affectation of learning, to go over the ground which has been so ably pre-occupied in the opinion given in that case, especially as the same ground has been traversed by Mr. Justice Story, in a note in his edition of Abbott on Merchant Ships, &c., which note was avowedly supplied from the opinion of Chief Justice Kent, above cited. I wish for one, since books are so prodigiously multiplied, to spare the profession and the public the expense of reiterated citations on points indubitably settled, when both text and comment may be found in almost every book in a lawyer's library. It is sufficient then to say, that by reference to the above cited opinion and the note of Mr. Justice Story, it will be found to be the established law of the maritime countries on the continent of Europe, *that freight is the compensation for the carriage of goods, and if it be paid in advance, and the goods be not carried by reason of any event not imputable to the shipper, it is to be repaid, unless there be a special agreement to the contrary.*"

This, then, being the law applicable to cases of freight, where there has been a failure to earn it, by the delivery of the thing shipped, the question arises in this case, was there a special agreement between the parties, modifying the legal operation of the contract contained in the bill of lading? We are of opinion there was testimony in the cause which, if believed by the jury, was sufficient to justify them in finding such an agreement. We refer to the deduction made in the bill for freight, the conversations which then took place, and that had between one of the appellants, Atwell, and Miller,

when he applied for a return of the money, he not only not denying it when told the freight was at his own risk, but, admitting that he had insured it.    This evidence tended to establish a contract, suppletory to that set out in the bill of lading.    If the jury found the existence of such supplemental contract, the appellants were discharged from the liability sought to be cast upon them in this suit.

That it is competent to the parties to a parol contract, to modify it by adding thereto, is established by the case of *Coates & Glenn, vs. Sangston, Garn. of Cunningham,* 5 *Md. Rep.,* 131, and the authorities there collected.    It is also a well settled principle, that one who has no interest in the freight cannot insure it; he has no insurable interest.    We did not understand the learned counsel for the appellee, to deny this doctrine; on the contrary, the authorities which he cited fully sustained it.    We understood him to contend, that the appellee had no insurable interest, because, under the bill of lading, the freight was at the risk of the owner of the vessel.    If it were at the risk of the owner of the vessel, then he was clearly right in the view which he urged? but this depends upon a fact, to wit, whether the contract contained in the bill of lading had been modified or not.    Whether it was so or not, was to be determined by the proof in the cause, among which was to be considered the policy of insurance, as giving color to the other evidence, going to show that it was agreed and understood between the parties, that the freight was to be at the risk of the shipper.

The second and third prayers on the part of the appellee are clearly erroneous; the second, because it prohibits the jury from finding from the fact of the insurance of the freight, a special agreement outside of the bill of lading.    The fact, standing by itself, possibly might not be conclusive of the matter, but, it is certainly a strong circumstance when coupled with the others testified to, going to show an additional agreement.    The prayer, by completely ignoring all the other facts in the case, to say the least of it, was well calculated to mislead the jury.    It is equivalent to saying, that the insurance

by the appellee was *no* evidence whatever. In this view we do not concur.

. From what we have said it will appear, that we are of opinion the instructions asked by the appellants should have been granted, and that the first prayer of the appellee should have been refused. It is defective in this: it denies the right of the parties to make another agreement *after* the making of the bill of lading. We know of no principle of law which warrants such a conclusion.

*Judgment reversed, and procedendo awarded.*