(Decided June 20th, 1860.)

# ELISHA LEE *vs.* FREDERICK BARREDA and PHILIP BARREDA.

Freight is the compensation for the carriage of goods, and if paid in ad-

vance, and the goods be not carried, by reason of any event not imputable to the shipper, it is to be repaid, unless there be a special agreement to the contrary.

If advances be made by the charterer on freight simply on the personal credit of the owner, who is bound to repay the same as a debt, independent of the issue of the voyage, the charterer has no insurable interest in the amount so advanced as freight.

But where, by the terms of the charter-party, the charterer has a lien upon the freight for his advances, he has an insurable interest, on account of such lien, to the extent of his advances, which he may insure in general terms as freight.

Where a charter-party stipulates that the charterer, if required, shall advance a sum "not exceeding one-third of the freight, which is to be in part payment of the freight, together with the cost of insurance on such advances," it gives the charterer a lien upon the freight, for his advances.

The terms of a charter-party, by which the charterer has the right to retain the amount advanced out of the freight, gives him a lien on the freight which he may insure, notwithstanding he had the right to reclaim the amount upon failure of the voyage.

Where an advance on freight is made, and the voyage fails, the charterer may reclaim the sum advanced, *with interest*, from the time the advance was made.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* brought on the 7th of April 1855, by the appellant against the appellees. Plea, *non assumpsit*. The case was submitted to the court below upon an agreed statement of facts, the material parts of which are as follows:

The plaintiff, being owner of the ship Hopewell, chartered her to the defendants, as agents of the Peruvian government, under a charter-party, executed at New York, on the 22d of March 1853. This charter-party stipulates that the vessel shall proceed from San Francisco to Callao, and thence to the Chinca Islands, there to take in a cargo of guano, (the owner to pay all port charges,) and to convey the same to Hampton Roads, and then to such port in the United States, not south of Hampton Roads or north of Boston, as the charterers might direct; "the freight to be paid, as under, at the rate of $19, in full, per ton of 20 cwt. net of guano, custom house weights. The master, if required, to be

supplied in Callao with a sum not exceeding one-third of the freight, free of interest and commission, which is to be in part payment of the freight, at the exchange of twelve per cent. premium, together with the cost of insurance on such advance, the captain's receipt to be considered binding on the owner. And should the charterers, or their agents, think fit to advance any further sum on the credit of the freight, for repairs, stores, and disbursements, such sums, with premium, interest, commission and insurance, to be considered in part payment of freight to the master, the captain's receipt for which is to be binding on the owner. One-third of the freight to be paid in cash on arrival at the port of discharge, the two months' interest being deducted, and the balance to be paid on the true and right delivery of the cargo, by approved bills at two months' date, or in cash, less the usual discount, at the option of the consignee, the captain to grant a receipt in triplicate for the amount of freight, when settled, stating also the number of tons of guano delivered." "The ship to be assigned to F. Barreda & Brother, or their agents at Callao, and at the port of discharge, who will charge, in the first place, one hundred and fifty dollars, and in the second, five per cent. on the freight, for managing the ship's business."

The vessel took her cargo of guano at the Chincha Islands, went to Callao, and being about to sale thence to Baltimore on her voyage, the master applied to the defendants at Lima, under the provisions of the charter-party, for a sum of money in part of the freight money, and received from them an amount within the limitation of the charter-party prescribed for such advances; to wit: the sum of $4263.84, in which was included the twelve per cent. exchange premium, specified in the charter-party, and also the sum of $150, the amount stipulated by the charter-party, to be paid to the defendants for the services, as consignees, of them or their agents, rendered at Callao to the ship. After this money was so advanced or paid, the ship proceeded on her voyage to the United States, and in the course of the voyage was found to be in such a condition from perils of the sea that she was obliged to put back to Callao, where, on survey, she was

found to be unfit to proceed on her voyage, and her cargo was, of necessity, discharged, and she was, of necessity, duly sold at Callao, the proceeds of sale being received by the auctioneer whom the master employed to make the sale. The auctioneer, after paying out of the proceeds several just and proper charges against the vessel, had in his hands a balance of $1702, which the defendants claimed and embargoed or arrested in his hands, and which he, on the 12th of May 1854, paid to the defendants, at Callao, the master making protest, in due form, against such proceedings on the part of defendants, and this money they have since retained, refusing to pay it to the plaintiff on request, though he continued owner of the vessel up to the time of her sale as aforesaid.

It was admitted that the defendants effected marine insurance, in their own names and on their own account, upon the said advanced amount as "for advances on freight to be considered as freight," and that they made claim, (on the voyage being broken up by the said sale,) against the insurers for the amount insured and due, and that they settled with the insurers (but without any assent or privity of the plaintiff) their said claim, by accepting, on the 8th of December 1854, as satisfaction, the amount, with abatement of said sum of $1702, expressly, however, reserving to the plaintiff any right he might set up or have, and not by said settlement affecting or prejudicing the plaintiff's rights in any way, as against said insurers or otherwise.

The plaintiff claims that he is entitled to be paid with interest from the 12th of May 1854, the said sum of $1702, as proceeds of his own property, and also the said sum of $150, and also the amount of the twelve per cent. exchange premium, computed on the said $1702, which two latter sums have been received by the defendants, in the payment obtained as aforesaid from the insurers.

The above admissions were made by the defendants, subject to the further facts qualifying the same, viz: that they have paid to their agents, in Callao, more than $150 proper and usual charges for the transaction of the business of the ship at Callao, on the occasion and in consequence of her

putting into that port and being sold as aforesaid. That the advance of $4263.84, as aforesaid, was made upon the following receipt, signed by the master or captain of the vessel, and dated Lima, 30th January 1854: "$4263.84.—Received from Messrs. F. Barreda & Brother the sum of four thousand two hundred and sixty-three dollars and eighty-four cents, as advance upon the freight due to the American ship Hopewell, 414 tons register, under my command, for the cargo of guano that I have taken on board, which amount, with the premium of insurance on the same, shall be deducted from the freight, and considered as part payment of it, according to what has been stipulated in the charter-party signed by me, and the charterers' agent, on 22nd of March 1853, at New York, being understood that both the freight and the ship, with all her appurtenances, as the owner's properties, are liable and responsible to the payment of the sum advanced." That the defendants have never denied the right of the plaintiff to a return of the twelve per cent. exchange on the $1702, received as aforesaid from the proceeds of the vessel's sale, but, on the contrary, have offered to pay the same frequently, and before the bringing of this suit, on a proper settlement of accounts between them. The defendants, however, have claimed, always, interest on the balance of the advance down to the time when they received the principal, less $1702, from the underwriters, and interest according to the Peruvian rate, 12 per cent. per annum.

The defendants claim, under these facts, the plaintiff is indebted to them, instead of their being indebted to him, and they claim to set off against any pretended claim of the plaintiff, the amounts due them as hereinbefore stated, and otherwise to resist his said claim as the facts may justify.

It was agreed, that the court may make inferences of fact, as a jury, from the above statement of facts, and that upon this statement, and such inferences as the court may so draw therefrom, the court may render such judgment as the same may justify, subject to the appeal of either party.

The defendants filed a statement or account of the plaintiff's claim, in which they charge themselves with 12 per

cent. premium on $1702, and credit themselves with six per cent. interest on the whole of their advances down to the date when the sum of $1702 was collected, as well as with six per cent. interest on the balance from the latter date until the insurance was paid. By this statement, a balance of $43.99 was shown to be due the plaintiff, and for that amount only the court (LEE, J.) gave judgment in his favor, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Chas. F. Mayer*, for the appellant:

The amount paid to the master was not a loan on security of the freight, but a part payment of the freight, irreclaimable in any event by the appellees, creating in them an interest in the freight insurable, and which *they insured* as their *own property*. The general rule that advances on freight are recoverable if the voyage is not performed, is subject to the exception, that where there is a special agreement to the contrary, or evidence from which such special agreement can be inferred, it cannot be so recovered. The fact that the appellees insured this freight in their own names and as their own property, shows that they considered the advances as so much payment on account of freight which they could not recover back. They could not legally have insured this freight if it was to be repaid them, in case the voyage was not performed, for in such a case they would have had *no insurable interest* therein. 11 *Md. Rep.*, 348, *Atwell vs. Miller*. 4 *Maule & Selw.*, 37, *De Silvale vs. Kendall*. 5 *Taunt.*, 438, *Andrew vs. Moorhouse*. 3 *Wm. Rob. Adm. Rep.*, 175, *The John*. 2 *Bos. & Pull.*, 321, *Blakey vs. Dixon*. 10 *East.*, 555, *Havelock vs. Geddes*. 4 *Camp.*, 241, *Gillan vs. Simpkin*. 6 *G. & J.*, 372, *Thomas' Adm'r vs. Vonkappf's Exc'r*. The receipt of the captain, or master, given when this advance was made, can have no effect upon the question, because he had no power under the charter-party

to pledge the ship and her appurtenances for the repayment of this sum.

*H. D. Loney* and *S. T. Wallis,* for the appellees, argued:

1st. That the money advanced at Callao was but freight paid in advance and on account, and the appellees were entitled to recover it back when the voyage was broken up. 11 *Md. Rep.,* 360, *Atwell vs. Miller.*

2nd. That there was no evidence of any special agreement to vary the general rule in such such cases. On the contrary by the very terms of the charter-party, a rate of premium to be charged for exchange on advances was specified, showing necessarily that the freight was not to be regarded as due till the voyage was ended, and that the advance was but an anticipation for the owner's convenience, to be replaced when the cargo should be delivered.

3rd. That the fact of insurance by the appellees as stated, so far from proving that the advance was to be made as an unconditional, absolute payment, is evidence incontrovertible of the contrary. The charter-party expressly authorizes such insurance at the owner's expense, and advances of this sort are properly insurable as freight, *eo nomine,* by the charterer, they being a charge and constituting a lien on the freight, and, therefore, giving to the charterer an insurable interest in the freight's being earned by the voyage. 34 *Eng. Law & Eq. Rep.,* 503, *Wilson vs. Martin.* 1 *Phillips on Ins., sec.* 338. 1 *Hall,* 327, *Robbins vs. New York Ins. Co.* 12 *La. Ann. Rep.,* 35, *Kathman vs. General Mutual Ins. Co.* 29 *Eng. Law & Eq. Rep.,* 116, *Hall vs. Janson.* 6 *Cal.,* 365, *Lawson vs. Worms.* 3 *Wm. Rob. Adm. Rep.,* 170, *The John.* 11 *Excheq. Rep.,* 684, *Wilson vs. Martin.*

4th. That, by the very terms of the captain's receipt, the ship and the freight were pledged for the advances, and this not only gave to the charterers an insurable interest in the freight, *eo nomine,* so as to rebut any presumption against the right to recover back, which might otherwise be drawn from the fact of insurance, but, in itself, gave them a right to the net proceeds of the ship.

5th. That the appellees were properly to be credited with the interest claimed in their statement of account, and the balance admitted by that statement and found by the court, was all that the appellant could rightfully recover.

BARTOL, J., delivered the opinion of this court:

This case was decided by the Superior court of Baltimore city, upon an agreed statement of facts, (for which see *ante.*, 191 to 194.)

The appellant, who was plaintiff below, recovered a judgment for $43.99, the balance conceded to be due him according to the account of the appellees; he claiming to recover a much larger sum, has prosecuted this appeal, which presents for our decision the single question, whether the appellees were entitled to be reimbursed out of the proceeds of the sale of the vessel at Callao, for the advances made by them to the master, in conformity with the provisions of the charter-party?

In the case of *Atwell & Appleton vs. Miller*, 11 *Md. Rep.*, 348, this court, adopting the opinion of *C. J. Parker*, in *Griggs, et al., vs. Austin*, 3 *Pick.*, 20, declared the law to be settled, "that freight is the compensation for the carriage of goods, and if it be paid in advance, and the goods be not carried, by reason of any event not imputable to the shipper, it is to be repaid; unless there be a special agreement to the contrary."

In this case there is no evidence of any special agreement to vary the general rule. The single circumstance relied on by the appellant, for the purpose of showing that the money, so paid, was to be "irreclaimable in any event," by the appellees, is that they effected insurance in their own names and on their own account, upon the said advanced amount, "as for advances on freight to be considered as freight," which it is contended they could not legally do, if the amount so advanced by them was to be repaid in case the voyage should not be performed; because, it is said, in that case they would have no insurable interest.

In 2 *Parsons Maritime Law*, 87, 88, the author says: "A charterer may insure any advances he makes, if they remain at his risk, and are not repayable by the owner in case of loss. But one advancing money on freight has no insurable interest, if the money so advanced is to be repaid to him, if the goods do not arrive." The same principles are stated by the same author, in his excellent work on *Mercantile Law*, *page* 419, and a reference to the cases cited by him will show that the principles are correctly stated.

There can be no doubt that if advances be made by the charterer on freight simply upon the personal credit of the owner, who is bound to repay the same as a debt "independent of the issue of the voyage," the charterer would have no insurable interest in the amount so advanced as freight.

In the case of *Atwell & Appleton vs. Miller*, 11 *Md. Rep.*, 348, one of the questions was, whether the shipper who advanced the freight, was entitled to recover it back, the voyage not having been performed? It was contended that there was a special agreement, by which the money so paid, was to be at the risk of the shipper, and not reclaimable by him in the event of the voyage not being performed, and this court decided that the fact of an insurance on the freight being effected by the shipper was evidence proper to go the jury as tending to prove such special agreement; because, in the absence of such special agreement, the shipper in that case would have had no insurable interest in the freight. But in the case before us, the fact that the appellees effected an insurance furnishes no ground, whatever, in support of the appellant's claim. Such insurance was not inconsistent with the right asserted by the appellees to reclaim the money advanced by them out of the proceeds of the sale of the vessel at Callao. Notwithstanding such right on their part, they had an insurable interest to the extent of their advances, which it was competent for them to insure as freight. By the true construction of this charter-party, these appellees had *a lien upon the freight* for their advances, which gave them an insurable interest.

In *Phillips on Ins.*, *Vol.* 1, *sec.* 338, it is said: "But if

Lee *vs.* Barreda.

the owner is absolutely chargeable with the advance, and liable for the same as a debt, independent of the issue of the voyage, then no insurable interest accrues to the charterers therefrom, any more than from any other demand he may have against the owner; except that if the charterer by the construction of the charter-party is entitled to a lien on the stipulated charter money, and has the right to retain the same, to the amount advanced, he has an insurable interest on account of such lien, to such amount, just as a lender on mortgage or bottomry, or any other party having a lien, has such an interest."

See, also, *Robbins vs. N. Y. Ins. Co.*, 1 *Hall*, 327, where it is correctly stated that such a lien gives the charterer an interest which he may insure in general terms under the name of freight, without describing it as a mortgage interest.

It is unnecessary for us to express any opinion upon the effect of the captain's receipt, or his power, under the charter-party, to pledge the ship and appurtenances for the repayment of the freight advanced. The terms of the charter-party, by which the appellees had the right to retain the amount advanced, out of the freight, gave them a lien on the freight, which they might insure; notwithstanding they had a right to reclaim the amount upon a failure of the voyage. Their right to retain the funds received at Callao, out of the proceeds of the sale of the vessel, does not necessarily depend upon any lien on the vessel; but rests upon their right to reclaim the money advanced, from the owner; and to apply to its payment, by way of set-off, any money which came to their hands belonging to him. In the opinion of this court, the appellant is not entitled to recover either the sum of $1702, received by the appellees from the auctioneer at Callao, nor the sum of $150, which had been received by the appellees for their services, as consignees, rendered at Callao. This latter sum the appellees were entitled to receive by the stipulations of the charter-party; and besides it is one of the admitted facts in the case, "that they have paid to their agents in Callao, more than $150 proper and usual charges for the transaction of the business of the

ship at Callao on the occasion, and in consequence of her putting into that port and being sold." This fact of itself furnishes a sufficient answer to the claim of the appellant for the $150. The claim of the appellant for a return of the 12 per cent. premium on $1702, was conceded by the appellees and allowed in their account, amounting to the sum of $204.24. From this amount was deducted interest on the sum advanced. We think the interest is properly charged in the account. The contract for the transportation of the guano was an entire contract, and the consideration for the payment of the advance having failed, the appellees were entitled to reclaim the sum advanced with interest from the time the advance was made.

*Judgment affirmed.*

(Decided June 21st, 1860.)