### MEHRBACH *v.* LIVERPOOL & GREAT WESTERN STEAM CO.

*(District Court, E. D. New York.    April 10, 1882.)*

SHIPPING—ORAL AGREEMENT—RECOVERY BACK OF FREIGHT MONEY.

Libellant and respondent entered into an agreement for the shipment by libellant, on various vessels of the respondent, of 250 horses, to be transported from New York to Liverpool, and that libellant, in consideration of a reduction in the rate of freight, should pay the freight at the time of shipment and assume all the risks of the voyage, including the risk of a failure to perform the voyage by reason of perils of the sea. Subsequently a shipment of 54 horses was made, which were lost at sea. *Held,* that the horses were taken on board in pursuance of the oral agreement, notwithstanding a bill of lading was delivered to the shipper, and that the respondent is not liable for the return of the freight money paid for their transportation.

*Butler, Stillman & Hubbard,* for libellant.
*Beebe, Wilcox & Hobbs,* for respondent.

BENEDICT D. J.    This is an action brought in the name of Isaac Mehrbach, libellant, for the benefit of the Phœnix Insurance Company, to recover of the owners of the steam-ship Idaho the sum of $2,700, being money paid those owners by the libellant as the freight of 54 horses shipped on board the Idaho on May 21, 1881, to be transported to Liverpool, but never delivered, owing to a loss of the steamer with her cargo at sea, before the completion of the voyage.

The evidence shows the shipment of the horses; the payment of the freight, amounting to $2,700, by the libellant to the respondent; the

insurance of the freight by the libellant, and its payment to him by the Phœnix Insurance Company after the sinking of the steamer.

The evidence further shows that in March, 1881, the libellant, Mehrbach, and the respondent entered into an agreement for the shipment by Mehrbach, on various vessels of the respondent, of 250 horses, to be transported from New York to Liverpool. One of the provisions of that agreement was that Mehrbach should, in consideration of a reduction in the rate of freight from $60 to $50 per horse, shipped or provided for, pay the freight at the time of the shipment of the horses, and assume all the risks of the voyage, including the risk of a failure to perform the voyage by reason of perils of the seas. In pursuance of that agreement several shipments were made, and among them the one of 54 horses here in question, being the third lot. For these 54 horses a bill of lading was issued by the respondent and delivered to the libellant. This bill of lading was a blank filled up in writing. In the written portion were the words "not accountable for damage or mortality." In the printed portion were the words "freight for said goods being paid immediately on landing, without any allowance of credit or discount." In the margin of the bill of lading was written the words "54 horses, at $50 each, $2,700, £551 0s. 4p., paid here. H. L. S."

The evidence warrants the further finding that this bill of lading was issued after the horses had been received on board the steamer. The bill of lading asserts that the horses had been shipped, and by well-known usage a bill of lading is never given until the property is on board.

The evidence also warrants the finding that the bill of lading was issued by mistake. Such is the testimony of Mr. Underhill, and no one contradicts him.

There is no evidence to show when the $2,700 were paid. The payment may have been made before the bill of lading was issued, and such, perhaps, is the proper inference, from the fact that the words "paid here," presumably written at the same time with the rest of the instrument, convey the idea that the payment had already been made. If the fact be that the payment was made before the delivery of the bill of lading, the circumstances lead directly to the inference that the payment was in performance of the only agreement then subsisting, viz., the oral agreement according to which the freight was then due, and the performance of the voyage at the risk of the shipper. Under this view of the transaction the libel must, of course, fail.

But if the proper inference in regard to the time of the payment be that it was contemporaneous with the delivery of the bill of lading, then the 'written contract presents an ambiguity, and may be explained by parol; for in one place the freight is made payable in Liverpool on delivery of the cargo; in another place it is made payable in New York on shipment of the goods. This inconsistency is explained by the surrounding circumstances; for, as it is important to notice, the bill of lading issued for these 54 horses was not the embodiment of any prior agreement, nor the result of prior negotiations. There was no prior agreement or negotiation for the shipment of 54 horses. The prior oral agreement was for 250 horses. It was a complete and valid contract, and it had already been partially performed when the bill of lading in question was issued. The 54 horses mentioned in the bill of lading were taken on board the steamer in pursuance of this prior oral agreement, and became bound by the provisions thereof. If no bill of lading had been issued for these 54 horses, and the $2,700 paid when it was paid, there would have been no room to contend for a liability to repay. To these circumstances must be added the fact that the issue of the bill of lading arose out of a mistake. From all these circumstances the meaning of the bill of lading is plain. The words "paid here" do not refer to an advance of freight to be thereafter earned, but were inserted in order to make the written bill of lading conform to the oral agreement under which the horses had been shipped, and were intended to supersede the printed words of the bill of lading. They mean, not that the freight was to be advanced, but paid as being then due. The word used is "paid" not "advanced." If such be the proper construction of the bill of lading, no liability to repay the $2,700 was incurred, and the libel must be dismissed.

Lastly, the words "paid here" may have been written after the bill of lading had been delivered to the shipper, and intended to be a receipt for money then paid. If so, it is evident that some different understanding from that contained in the bill of lading was entered into subsequent to the bill of lading. The act of paying the freight here was an act not provided for by the bill of lading, and must be the result of some agreement about this freight made between these parties after the bill of lading had been issued, which, because subsequent to the written contract, may be proved, although not in harmony with the written contract, and oral. See *Atwell* v. *Miller*, 11 Md. 348. Then arises the question, what was that subsequent agreement, in pursuance whereof the respondents, on their part, received

in New York $2,700, which, by the bill of lading, they were entitled to receive in Liverpool, and the libellant, on his part, paid in New York $2,700, when by the bill of lading he was to pay in Liverpool on performance of the voyage? Evidently a part of that agreement was that there should be no liability to repay the money then agreed to be received and to be paid. I say evidently, because a mistake had been committed in issuing the bill of lading; because, by the oral agreement, then partly executed, there was to be a payment of $2,700 for these same horses, and without liability to repay; and because the shipper, after he had paid the $2,700, insured himself at his own expense against losing the $2,700 by the loss of the ship.

These circumstances are to my mind abundantly sufficient to repel the implication of a promise on the part of the respondents to repay the $2,700 in case of loss of the ship; and in the absence of a promise to repay the action must, of course, fail, for it is in its nature an action for money had and received.

The case, therefore, looked at in any aspect, fails to make out a liability on the part of the defendants to repay to the libellants the $2,700 in question.

I do not see that the fact that the action is for the benefit of the insurance company, from which the libellant has received his $2,700, helps the case. The insurance company take the place of the shipper, and the words "paid here," on the bill of lading, were sufficient to put them on inquiry as to the circumstances under which the payment was made.

My determination, therefore, is that the libel must be dismissed, and with costs.