(Decided 6th May, 1872.)

---

# The National Mechanics' Bank of Baltimore *vs.* The National Bank of Baltimore.

## *Evidence of Agency—Province of the Court and Jury as to a question of Agency.*

The declarations of a broker or of an agent are not *per se* evidence of agency; but when evidence of facts tending to show that the relation of principal and agent existed, has been offered directly or circumstantially, it is then the province of the jury to determine whether there is such proof of agency as to make the declarations of the supposed agent binding on the principal.

The declarations of an agent are not admissible to bind the principal until the agency is established; but where there is evidence of agency, although not full and satisfactory, such evidence should be submitted to the jury who are the exclusive judges of its weight.

It is not the province of the Court to determine the question of agency *vel non;* but to decide whether there is any evidence tending to prove agency.

Appeal from the Superior Court of Baltimore City.

Three exceptions were taken by the defendant who appealed.

*First Exception:* This is fully stated in the opinion of the Court.

*Second Exception:* The plaintiff proposed to read in evidence the following testimony of Mr. Gibson, late cashier of the appellee, as taken by a stenographer on a former trial of the cause:

*Question.* "Can you state any conversation that took place between L. P. Bayne and yourself, on the 23d of April, 1866, with regard to a transfer order?"

*Answer.* "On the morning of the 23d of April, as I was approaching the bank door from Market street, I met Mr. Bayne very near the bank door. He said to me that the Mechanics' Bank was debtor $65,000, and asked me whether they could get $25,000. I told Mr. Bayne at once that I did not know what would be the result of our exchanges, but that I would see. He said he would return. He did return, I suppose, about 10.30 A. M., at which time my brother, Dr. Gibson, was with me. Mr. Bayne came in and asked me whether the Mechanics' Bank could get that $25,000. I had ascertained that we were credited to the amount of $63,000; and told him that the bank could have it. I went with him to the counter of the teller, whom I instructed to draw a transfer draft in favor of the Mechanics' Bank for $25,000."

The defendant's counsel objected to the admissibility in evidence of any statements of L. P. Bayne, so as to affect the defendant, on the ground that the declarations of Bayne were not evidence to prove his agency for the defendant, and that as part of the *res gestæ,* they were not admissible until the agency had been established by other evidence.

But the Court (DOBBIN, J.) said that there was now some evidence in the cause which justified the admission of the declarations of Bayne which had been previously offered and rejected, and therefore overruled the objection and admitted the evidence, reserving to itself the right to modify its decision if it should see fit to do so in the progress of the cause.

*Third Exception:* The plaintiff offered nine prayers, the fourth, sixth, seventh and eighth of which, the Court rejected, the others were granted as follows:

1. If the jury shall find from the evidence in the cause that the transfer order, dated the 23d of April, 1866, offered in evidence, was applied for and obtained by the witness, Mr. Bayne, as agent of the defendant, and that he was regarded by the cashier of the plaintiff as such agent, and that the said Bayne in said transaction was in fact such agent; and shall further find from the evidence that said transfer order came into the possession of the defendant, and was used by said defendant in the manner stated in the evidence; and that by such use the defendant received at the Clearing House, on the 28th day of April, 1866, the sum of $25,000 of the money of the plaintiff; and shall further find that the said plaintiff was never paid for said transfer order by the defendant, or by any other party; and that after the receipt of said money as aforesaid, by said defendant, if the jury shall find such receipt, the plaintiff demanded a return and re-payment of said money, and that the defendant refused to return the same, then the plaintiff is entitled to recover in this suit.

2. That it is not necessary that the jury shall find, as a matter of fact from the evidence, that there was any special authority given by the defendant to said Bayne, or to the firm of Bayne & Co., to act as agent in the procurement of the said Clearing House order from the plaintiff for the defendant; but the jury are at liberty to find such agency, from all the facts and circumstances in evidence, if they shall believe from all the evidence in the cause, that said Bayne, or said Bayne & Co. was in fact such agent in the procurement of said transfer order.

3. That there is no legally sufficient evidence in the cause from which the jury can find, as matter of fact, that in April, 1866, there was a well established and uniform usage, which entitled the defendant, as the holder of the said paper, mentioned in the plaintiff's first prayer, to demand as matter

of right payment from the Clearing House in legal tender notes of the amount mentioned in said paper. (Refused as offered, but granted with the following qualification :)

But the jury is at liberty to find from the evidence in the cause as to the origin of such transfer orders, the terms in which they were drawn, the convenience they were intended to subserve, and the fact that they were sometimes so used, that such orders represented money which might be drawn in legal tender notes as well as used to pay debtor balances.

5. If the jury shall not find from the evidence in the cause, that the said house of Bayne & Co. was acting as agent of the defendant in the procurement of said transfer order, dated the 23d of April, 1866, but shall find that said house was acting in its own behalf; and shall further find, that said order was delivered by the cashier of the plaintiff, on the implied understanding that the same would be paid for during the business hours of said day; and shall further find, that no payment therefor was ever made to the plaintiff by said Bayne & Co., or by any party whatever; and shall further find, that the defendant had notice, at or about mid-day of the said 23d of April, 1866, that said transfer order had not been paid for, and that the plaintiff did not acknowledge any liability, on its part, to the defendant, or to said Bayne & Co., or otherwise on account of said order; and shall further find, that, afterwards, the defendant sent in said order, in a sealed package, to the Clearing House, on the morning of the 28th of April, 1866, and received, on that day, the sum of $25,000 by reason of having sent in said transfer order, in said sealed package on that morning, as a part of its claim against the plaintiff; and shall further find from the evidence, that by the rules and practices of the Clearing House, such a document as said transfer order, was not a document proper to be sent in as an item of claim against the plaintiff, to be paid in the exchanges of that day at said Clearing House; and that said rules and practices were known to the defendant; and shall further find, that the rules and practices in force at that

time, were such as have been offered in evidence, and that the plaintiff, in pursuance of said rules and practices, paid, at the Clearing House, the amount for which the plaintiff was, on that day, declared to be a debtor, inclusive of the sum of $25,000, claimed by the defendant as due on account of said Clearing House order; and that the defendant afterwards received at the Clearing House the amount for which it appeared on that day to be a creditor, inclusive of said $25,000; then such payment was not a voluntary payment by the plaintiff, and does not, of itself, debar the plaintiff from maintaining this suit.

9. And the jury are also at liberty to find, from the evidence, that Bayne was the agent of the defendant in the matter of obtaining Clearing House transfer orders for the defendant, from the plaintiff; if they shall find such orders were obtained, notwithstanding he may have had no instructions to obtain them in the name of and on the credit of the defendant; provided, the jury shall find from the evidence, that the defendant adopted and ratified the acts of Bayne in obtaining such orders for its use, by using them in fact for its own benefit, and by subsequently paying the plaintiffs for the same, through said Bayne, by means of its own cashier's check. (Refused as offered, but granted with the following qualifications:)

Insert, " with full knowledge of all the facts," between the words, " defendant" and " adopted," in the seventeenth line from the bottom of this page, and add the following to the end of the prayer: " but to enable the jury to find a ratification by the defendant under this instruction, they must find that Bayne bought this transfer draft in the name, and on the credit of the defendant, notwithstanding he may have had no instruction to do so, and that afterwards the said defendant, with full knowledge of all the facts, adopted and ratified his act."

The cause was argued before BARTOL, C. J., STEWART, BOWIE and ALVEY, J.

*Theo's B. Horwitz* and *Reverdy Johnson,* for the appellant,

Contended, that even if the language of Gibson used in Bayne's presence, was to be treated as a declaration of Bayne, which was denied, still the Court should not have allowed it to go to the jury, for the following reasons:

1st. The evidence which had been offered-to show that Bayne was in fact the agent of the appellant in obtaining this transfer order, was not sufficient to justify the admission of his declarations. To afford such a justification, the proof should have "clearly established" the agency, or in other words, should have been sufficient "to show an agency" "to the satisfaction of the Court." The proof should not only tend to establish the agency, but should in the judgment of the Court, make out a clear *prima facie* case, and not leave the mind of the Court in doubt. *Marshall vs. Haney,* 4 *Md.,* 511; *Atwell vs. Miller,* 11 *Md.,* 359; *Nicholls vs. Dowding and Kemp,* 1 *Starkie's Rep.,* 81; *Rosenstock vs. Tormey,* 32 *Md.,* 182.

2d. This evidence was admitted generally, and the Court never modified its ruling, but on the contrary, expressly instructed the jury in the second instruction granted as prayed by the appellee, that they were "at liberty to find the agency from all the facts and circumstances in evidence." The direction of Gibson to Smith in Bayne's presence, which was considered by the Court as equivalent to a declaration by Bayne, was thus made evidence of the fact of Bayne's agency. And further, the conversations between Bayne and Gibson, which had been at first rejected by the Court, were also afterwards admitted generally, and became evidence of Bayne's agency. Thus, although the jury may have thought that the evidence in the cause, other than this direction of Gibson's and these conversations of Bayne, utterly failed to establish the agency, they may yet have found the agency from this direction and these conversations. To let the case go to the jury in such a form, was clearly to permit the agency to be established by the declarations of the agent. This was error. In the case of partnership, where each partner is in law the agent of the

others, the declarations of one partner are not admissible to prove the partnership as against the other partners. The same rule applies to the ordinary relation of principal and agent; and the declarations of the agent, while admissible against the principal as part of the *res gestœ*, after proof of the agency satisfactory to the Court, are never admitted as evidence of the agency. *Story on Agency*, sec. 136 ; 1 *Greenleaf on Ev.*, sec. 177 ; 2 *Greenleaf on Ev.*, sec. 484; *Collyer on Part.*, 554 ; *Mussey vs. Laban*, 3 *Cushing*, 517 ; *Allcott vs. Strong*, 9 *Cushing*, 323 ; *Dutton vs. Woodman*, 9 *Cush.*, 255 ; *Brigham vs. Peters*, 1 *Gray*, 139 ; *Garth vs. Howard*, 8 *Bing.*, 451, (21 *E. C. Law Rep.*)

The appellee again offered in evidence the conversations of Bayne with Gibson, which had been previously offered and rejected. The Court permitted them to go to the jury on the ground " that there was now some evidence in the cause which justified " their admission. This evidence should have been rejected for the reasons set forth under the first point.

The first prayer of the appellee should have been rejected as well because there was no legal and sufficient evidence in the case that Bayne was the agent of the appellant in obtaining the transfer order of April 23d, 1866, as because the language of the prayer was calculated to confuse and mislead the jury.

The second prayer of the appellee was improperly granted, because by its first clause it was calculated to mislead the jury, and because by its second clause it authorized the jury to find the fact of agency from the declarations of Bayne, or from the statements of others made in his presence.

The third prayer of the appellee should have been rejected, because there was no question in the case about any usage of the character described in the prayer. The right to demand payment of a transfer order in legal tender notes, depended on the true construction of the order itself, looking to the circumstances set forth in the Court's qualification of the prayer. The transfer order was a written instrument, and

was therefore to be construed by the Court either absolutely or conditionally, upon the finding of certain circumstances by the jury. But the qualification left the whole question of the construction of the order to the jury, and was in that respect erroneous. *Williams vs. Woods,* 16 *Md.,* 252, 253.

Further, the language of said qualification was certainly calculated to confuse and mislead the jury.

The Court erred in granting the fifth prayer of the appellee, because, even if the prayer were correct in the conclusion of law, stated at the end of it, which is denied, it was calculated to confuse and mislead the jury by its long recital of various circumstances which had no bearing on that conclusion.

The ninth prayer of the appellee did not refer to or in any way embrace or cover the case of the transfer order in controversy in the cause, but, on the contrary, referred only to cases where the appellant had paid for transfer orders by its cashier's check. It introduced a new and immaterial issue, and obviously could not be properly granted. The Court accordingly rejected it as offered; but went on to grant it with a qualification, viz:

The jury could not find "a ratification by the defendant under this instruction" of the transfer order in controversy, because this transfer order had not been paid for except by Bayne's memorandum check, while the instruction referred to cases where the orders had been paid for by the check of the appellant's cashier. This transfer order was thus placed in a category to which it did not belong, and the jury were thus authorized to assume that they might consider it as embraced in the prayer, if they found the facts recited in the qualification. This tended to mislead the jury, and did injustice to the appellant.

But the principal and conclusive objection to this qualification is, that there was no evidence in the cause upon which it could be founded. For the very reason that there was no such evidence, the counsel for the appellee had not offered a

prayer presenting to the jury the question of the obtention by Bayne of *this* order on the credit and account of the appellant, and the adoption and ratification of *that* act by the appellant, with knowledge of the facts, but had contented themselves with a prayer relating to other orders.

*Wm. F. Frick* and *William Schley*, for the appellee.

The first and second exception involve in principle precisely the same question. Whilst the plaintiff's counsel did not suppose, that the acquiescence of Mr. Bayne in the statement made by Mr. Gibson to Mr. Smith, in Bayne's presence, was, *per se*, proof that Bayne was acting in the transaction as agent of the defendant; nor that the declarations of Bayne himself were, *per se*, evidence of such agency; yet they supposed, as it was impossible to produce, *simul et semel*, every link in their proposed chain of evidence, that they had a right to commence at either end of the chain; and that, when they had closed, the question would be one, as to the *effect* of the evidence, rather than to its *admissibility*. For the question of agency may often depend on facts and circumstances; and must be determined upon *all* the evidence in the cause. The plaintiff's counsel also supposed, that what was said and done at the time, in relation to the transfer order, was admissible, as part of the *res gestæ*. Mr. Smith wrote the order, in the presence of Mr. Gibson, and of Mr. Bayne, by direction of Mr. Gibson. Was it not admissible to shew that he acted under such direction? And in what way could such direction be more satisfactorily shewn than by giving the very words used at the time of the transaction—*dum fervet opus?* 1 *Greenleaf's Evidence, secs.* 108–114.

The evidence was properly admitted.

1st. As part of the *res gestæ*. The theory of the defendant was, that Mr. Gibson had passed the transfer order to Mr. Bayne, on the credit of Bayne & Co., and had received in payment therefor the memorandum check of Bayne & Co. The claim of the plaintiff was, that the transfer order was

procured by Bayne for the defendant, for the use of the defendant.

Upon the defendant's theory, Mr. Gibson would have committed an enormous wrong. In *Eichelberger vs. Finley*, 7 *H. & J.*, 387, the Court, speaking of the officers of a public bank, said, in effect, they can honor no check, *without a gross violation of their trust,* beyond the amount to the drawer's credit, on deposit.

It was a material fact to be shewn, that Bayne did not apply for the transfer order in the name, or on the behalf, of Bayne & Co.; and that it was not delivered to him as a loan to Bayne & Co. It might be that he had no authority to use the name of the defendant, and that he obtained the transfer order under a false pretence, and *mala fide.* If so, the defendant would not be affected by his statement or acquiescence. But the question of authority *vel non* was an ulterior question, to be decided upon the whole evidence; and was a totally different question, from the intention and act of Mr. Gibson.

2d. The evidence was admissible, on the question of agency *vel non*, in the procurement of the order in controversy.

It is conceded by the plaintiff's counsel that the declaration of a party that he is acting as agent for a third party is no evidence, as against such third party, to establish the fact of agency, where it is denied. But there is another rule equally as well established, that, when the fact of agency is made out by other proof, the statements and declarations of the agent, made at the time, and constituting a part of the *res gestæ,* bind the principal. *Story on Agency*, secs. 134–137.

The objection below was based on the case of *Rosenstock vs. Tormey*, 32 *Md.*, 182, and it was twofold : firstly, that the statements and declarations of a party, professing to act as agent, are not evidence to prove such agency as against the alleged principal; and secondly, that proof of agency is to be first given, and to be decided by the Court, before the statements, declarations or acts of the party, professing to act as agent, can be received in evidence.

The learned Judge yielded to the authority of this decision, in his action, in admitting the evidence, and the appellee relies upon it, as showing that *the jury* is to decide the question of agency : that it may be *inferred* from facts and circumstances, and is to be decided upon *all* the evidence in the cause.

By the testimony of Mr. Carter and Mr. Smith, the fact of an actual agency in procuring from the plaintiff transfer orders for the defendant was shown to have existed ; then the privity of contract between the banks, evidenced by transfer orders, drawn in favor of the defendant, and paid for by the checks of the defendant's cashier, in favor of the plaintiff—no pretence of notice of revocation of authority—the legal presumption of continuance—certainly furnished *some* evidence to the jury, that the order of the 23d of April, 1866, was obtained for the defendant by Bayne, as the defendant's agent. It may have been slight evidence ; but the language of this Court, in the case of *York County Bank vs. Stein,* 24 *Md.,* 466, applies to a case like this.    Quoting *Henderson vs. Mayhew,* 2 *Gill,* 409, the Court said, " if there was evidence to establish such an agency, the jury were the exclusive judges of its weight."    And this was but a repetition of what had been previously said, in *Morrison vs. Whiteside,* 17 *Md.,* 459.    All that was necessary to be done by the plaintiff in order to admit the acts, declarations and acquiescence of Mr. Bayne as evidence against the defendant, was to adduce some proof, from which *the fact* of agency might be inferred.  · *Thomas vs. Sternheimer,* 29 *Md.,* 271 ; *Paley on Agency, ch.* 3, *sec.* 2, *p.* 162, (28 *Law Library,* 70, &c.)

The third exception brings up, for review, the instructions given by the Judge to the jury.    And in these there is nothing of which the defendant below can rightfully complain.

Bowie, J., delivered the opinion of the Court.

The appellee instituted suit in the Superior Court of Baltimore City, in June, 1866, against the appellant and filed its

*narr.* containing the common counts in *assumpsit.* The object of the suit was to recover the sum of $25,000, the amount of an order issued on the 23d of April, 1866, by the appellee in favor of the appellant, in the following words:

THE NAT. BANK OF BALTIMORE,
*April* 23, 1866.

Clearing House will transfer to the Mechanics' National Bank, twenty-five thousand dollars of balance due us.

$25,000.          (Signed,)      J. THOS. SMITH, *Teller.*

The parties to the suit were both members of the Baltimore Clearing House Association. The Constitution, and resolution of April 25, 1864, altering the eighth section of the Constitution, and also the form of Clearing House certificates, were given in evidence.

From these it appears the object of the Association was "the effecting at one place, and at one time, of the daily exchanges between the several associated banks, and the payment at the same place, of the balances resulting from such exchanges."

Sec. 6 provides: "The association shall appoint one of their members to be a depository of such coin (or greenbacks) derived from the exchanges as any of the associated banks may desire shall remain on special deposit for safe keeping; and the depository shall issue therefor, in proper form, certificates in convenient amounts, signed by the cashier or paying teller, which shall be received in payment of balances and *shall be negotiable only among the associated banks.*"

By the 8th section of the Constitution, as amended by resolution of the 25th of April, 1864, it is declared, "the hour for making exchanges at the Clearing House shall be half past eight o'clock, A. M. The debtor banks shall pay at the Clearing House daily, by 11 o'clock, the balances due from them respectively, either in legal tender currency or certificates, and the creditor banks may receive the respective

balances due to them by 12 o'clock, *provided all the balances due from the debtor banks shall then have been paid.*"

Sec. 9. "Should any one of the associated banks fail to pay the balance due from it by 11 o'clock, the depository bank shall notify such delinquent bank, and if, after such notice, the money is not paid by 12 o'clock, such bank shall be considered as ruled out by such default, and notice thereof given immediately by the depository to the respective banks, who shall forthwith furnish to the depository, the amount of such balance, in proportion to their respective balances against the defaulting bank, resulting from the exchanges of that day; and the amount so furnished to the depository shall constitute claims on the part of the responding banks respectively, against the defaulting bank."

The appellee delivered the Clearing House transfer order on the morning of its date, about 10.30 A. M., to L. P. Bayne, who, at the time of its delivery, left his memorandum check for the same amount drawn on the appellee, with whom he kept no account and where he had no funds, and L. P. Bayne soon afterwards delivered the transfer order to the appellant, who placed the same to the credit of Bayne's account with it, which was then largely overdrawn.

The transfer order not having been presented at the Clearing House, until after the balances due the appellee on that day had been paid, and the appellant having settled its balances at the Clearing House with other funds, demanded payment of the same of the appellee, who refused to pay it, unless the appellant would give its check for it.

In the meantime Bayne had failed. Several days afterwards, (after some correspondence between the parties as to the right of the appellant to retain or use the transfer order,) the appellant sent the order to the Clearing House, where it was settled from balances due the appellee, and returned to it in a sealed package, in liquidation of its balances.

The appellee then instituted suit, and the verdict and judgment being in its favor, an appeal was prayed.

Three bills of exception were taken by the appellant. The first and second to the admission of testimony tending to prove that Bayne, or Bayne & Co. were the agents of the appellant, in purchasing the transfer order on the Clearing House; the third to the granting of the first, second, and fifth prayers of the appellee as presented, and to the granting of its third and ninth prayers with modifications.

The first and second bills of exception, and the first and second prayers of the appellee, included in the third bill of exception, present questions as to the order, admissibility and competency of the evidence to charge the appellant as principal, for the acts of its supposed agents. Although varying in form, these are almost identical in substance, and will therefore be considered and disposed of together.

It was admitted, that at a former trial of this cause, in which the same issues were joined, the jury not being able to agree were discharged without giving any verdict, and that at that trial, Patrick Gibson, late cashier of the appellee had been examined and cross-examined as a witness, and since died. By agreement, the testimony of Mr. Gibson as taken by a stenographer at the former trial, was admitted to be read to the jury, subject to exceptions.

On the third interrogatory being read, viz:

" Can you state any conversation that took place between L. P. Bayne and yourself, on the 23d of April, 1866, with regard to a transfer order? " the defendant's counsel objected to the admissibility in evidence of any statements of L. P. Bayne, so as to affect the defendant, on the ground that the declarations of Bayne were not evidence to prove his agency for the defendant, and that, as part of the *"res gestæ,"* they were not admissible, until the agency had been established by other evidence. Which objection was sustained by the Court.

The appellee then proceeded to examine Messrs. Carter and Smith; the former, paying teller of the appellee for ten or twelve years prior to April, 1865, and the latter, paying teller since.

National Mechanics' Bank of Balt. *vs.* National Bank of Balt.

Mr. Carter testified that, as paying teller of the appellee, he had repeatedly issued Clearing House transfer orders to the appellant, through Mr. Bayne, who was the first person who applied for such orders in favor of the appellant, in payment of which, Bayne *always* at first, brought checks of the cashier of the appellant on their bank, at the time he obtained the transfer orders; and during the latter part of his service, Bayne would sometimes leave his own memorandum check, and would shortly afterwards, in a few minutes return and take it up with a check of the appellants on their bank. He had no recollection of Bayne having paid for the Clearing House transfer orders, in any other way. He took Bayne's memorandum check, until he could bring the cashier's check of the appellant. Bayne never brought his own certified check to the appellee for transfer orders whilst witness was there. It was a common thing for Bayne to obtain transfer orders for the appellant.

Mr. Smith testified that he succeeded Carter as teller of the appellee; that he had as teller in April, 1866, issued Clearing House transfer orders to the appellant; he thinks Bayne usually applied for them, and that he gave them by the order of the cashier. Bayne, during witness' period of service, paid for them by his (Bayne's) certified checks on the appellant's bank. Bayne usually, when he got the transfer orders, left his memorandum checks on the appellee's bank, in which he kept no account; that Bayne kept his account in the appellant's bank. Having testified that the transfer order of April 23d, 1866, for $25,000, drawn by the appellee in favor of the appellant, on the Clearing House, was in his hand writing, he was requested to state the circumstances under which it was given; he stated, that on the 23d of April, 1866, Mr. Gibson, the cashier of the Bank of Baltimore came to his desk accompanied by Mr. Bayne, and said, while Bayne was standing by, " Mr. Smith, the Mechanics' Bank wants a transfer order for $25,000, give Mr. Bayne an order for that amount, in favor of the Mechanics' Bank."

The appellant objected to what Gibson said to the witness, being given in evidence to the jury, upon the same ground on which the declarations of Bayne, had been hereinbefore objected to; but the Court overruled the objection, and allowed the evidence, on the ground that there *was some evidence* in the case, *the weight of which the Court was not called upon to determine,* which tended to prove that Bayne had acted as the agent of the defendant, in the matter of obtaining transfer orders from the plaintiff, in favor of the defendant for its use,—the Court reserving to itself the right to modify this ruling, if it should deem it proper in the progress of the cause to do so.

The declarations of Gibson, in the presence of Bayne, admitted under the ruling of the Court, (which constitutes the subject of the first exception,) were offered under very different circumstances from those which accompanied the declarations of Bayne, previously excluded.

These were not preceded by any evidence tending to show a previous course of dealing by Bayne, in the name and on behalf of the appellant, with the appellee, for Clearing House transfer orders, or any previous transactions between the parties, in their corporate capacities; but were an isolated occurrence as far as the record shows, in which Bayne, for the first time, represented himself as acting for the appellant. On the contrary, the testimony of Carter and Smith, tended to show continuous antecedent dealings, in which the checks of the appellant were used to procure transfer orders, and other facts were developed, from which privity between the appellant and Bayne, as principal and agent, might have been inferred.

Declarations of a broker or agent are not *"per se"* evidence of agency : but when evidence of facts *"in pais"* tending to show the relation of principal and agent existed, has been offered directly or circumstantially, it is then the province of the jury to determine whether there is such proof of agency, as to make the declarations of the supposed agent, binding on the principal.

It is not the province of the Court to determine the question of agency "*vel non*," more than any other fact involved in the issue; but, to decide whether there is any evidence tending to prove agency. Whether there be any evidence or not is a question for the judge, whether it is sufficient evidence is a question for the jury. 1 *Greenleaf's Ev.*, sec. 49.

"The preliminary question is to be tried by the judge, though he may in his discretion, take the opinion of the jury upon the facts, on which the primary question depends." 1 *Greenleaf's Ev.*, sec. 49.

In *Rosenstock vs. Tormey*, 32 *Md.*, 182, this Court alluding to the practice of allowing parties to introduce evidence which was irrelevant "*per se*," upon the assurance of counsel, it would be followed up by evidence which would make it relevant, remarked: "We are not aware of any decision that has applied the rule to a case where declarations or acts of agents are offered for the purpose of binding principals. On the contrary, it is plainly said in *Marshall vs. Haney*, 4 *Md.*, 511, that the declarations of an agent are not admissible to bind the principal under any circumstances until the agency is first clearly established, and the language of the Court in *Atwell vs. Miller*, 11 *Md.*, 359, is to the same effect. It is conceded of course, that to entitle the plaintiff to recover in this action, there must be proof that Hoflin was duly authorized to give the order and direct the purchase on the joint account of the defendants."

"This authority or agency, need not be proved by writing; it may be inferred from facts and circumstances, from the permission and acceptance of his services, and subsequent adoption and ratification of his acts will suffice. But before his admissions, declarations or acts were admitted to bind the defendants, we think the Court should have required the production of *some proof* tending to show the existence of such agency or authority."

"The failure however to do so, is not in this instance an error requiring a reversal of the judgment, because we are of

opinion *there was some evidence* adduced tending to show the agency, and fully sustaining the refusal of the Court—which is the subject of the fourth exception—to exclude Hoflin's statement, on the ground that no such proof had been given, and the defendants were not therefore in fact, prejudiced by the ruling in the second exception."

It is clear from the context, in which the citation from *Marshall* and *Haney* and *Atwell* and *Miller*, is embodied, this Court did not intend to decide that full proof of agency should be required, before the acts and declarations of the supposed agent, were submitted to the jury. In *Marshall vs. Haney*, it does not appear there was any preliminary evidence offered of the agency of Kinkle, whose declarations were proposed to be offered in evidence to the jury to bind the defendant. In passing upon the exception to these declarations, the Court said: "The declarations of an agent are not admissible to bind his principal under any circumstances, until the agency is first clearly established, which has not been done in this instance." 4 *Md.*, 511.

So in *Atwell, etc. vs. Miller*, it was proposed to ask a witness, whether he had heard certain conversations between a man named Johns and the appellants, or either of them, which was objected to. The Court said, the question was asked upon the ground that Johns was a partner, or an agent of the parties, and there was not sufficient evidence of either. "Until one of these propositions was first settled *to the satisfaction of the Court*, the testimony was inadmissible." 11 *Md.*, 359.

These decisions are strictly conformable with the rules of evidence, having regard to the respective provinces of the Court and jury. .

If full proof of agency must be given before the acts of the supposed agent can be submitted to the jury, the Court would become judges of the fact as well as of the law.

The Judge only decides whether there is *prima facie* any reason for sending it at all to the jury. 1 *Greenl. Ev.*, sec. 49.

This position is, we think, fully supported by the authorities cited by the appellee on this point.  *York Co. Bank vs. Stein*, 24 *Md.*, 466 ; *Henderson vs. Mayhew*, 2 *Gill*, 409 ; *Morrison vs. Whiteside*, 17 *Md.*, 459 : from which it may be collected, that where there is evidence of agency, although not full and satisfactory, yet such evidence should be submitted to the jury, who are the exclusive judges of its weight.  The appellant argues, that as the Court below never afterwards modified its ruling in the first exception, but in the second instruction granted at the instance of the appellee, directed the jury that they were "at liberty to find the agency from all the facts and circumstances in evidence," that although the jury may have thought that the evidence in the cause, other than this direction of Gibson, and these conversations of Bayne, utterly failed to establish the agency, they may yet have found the agency from this direction and these conversations.  They say, "to let the case go to the jury in such a form, was clearly to permit the agency to be established by the declarations of the agent."  The answer to this is, the second instruction, of course, was not given until all the evidence in the cause was in ; the argument assumes, that in all that evidence, there was none tending to establish agency, except the items objected to; and that all the evidence, combined with the directions and conversations of Gibson and Bayne, produced no fuller proof of agency, than the directions and conversations alone ; any chain of testimony however strong, may be destroyed by separating the links in this way.

But it is not the province of the Court to assume that the jury found contrary to the evidence.  If the appellants believed this, their remedy was a motion for a new trial.

In considering the objections to the evidence in the first and second bills of exception, we have answered those to the first and second prayers in the third bill of exception, except the general one, that they were calculated to mislead the jury, to which, being legitimate conclusions from the evidence referred to in them or previously given, they were not liable.

The objections to the third, fifth and ninth prayers of the appellee, which constitute the remaining subjects of the third bill of exception are that they submit to the jury questions of which there was no evidence; that they involved matters of law—and that they were calculated to mislead the jury. The third prayer it is said should have been rejected, because there was no question in the case about any usage of the character described in the prayer. That the right to demand payment of it in legal tender notes depended on the construction of the order itself. The transfer order was a written instrument, and was therefore to be construed by the Court, either absolutely or conditionally, upon the finding of certain circumstances by the jury. But the qualification left the whole question of the construction of the order to the jury.

This prayer, as originally offered, affirmed there was no legally sufficient evidence in the cause, that in April 1866, there was a well established and uniform usage, which entitled the appellant as holder (of the transfer order) to demand of right, payment from the Clearing House in legal tender notes; which proposition the Court qualified by adding, "but the jury is at liberty to find from the evidence in the cause as to the origin of such transfer orders, the terms in which they were drawn, the convenience they were intended to subserve, and the fact that they were sometimes so used, that such orders represented money, which might be drawn in legal tender notes, as well as used to pay debtor balances."

In the course of the trial below, it appears from the third bill of exception, there was a struggle on the one hand, to prove that the transfer order only served the purpose of assigning so much of the balance due the creditor bank at the Clearing House, to the debtor bank named in the order, and was not negotiable; on the other, to show that it was deemed equivalent to a draft payable to bearer, and was payable on presentation in legal tender notes.

Mr. Gibson, in his cross-examination, testified, "If you mean to ask me whether the Clearing House pays transfer

# APRIL TERM, 1872. 25

National Mechanics' Bank of Balt. *vs.* National Bank of Balt.

drafts in greenbacks, I say no; it will be shown that the Clearing House is not in the habit of honoring transfer drafts" * * * "that it is paid in a certificate."

Mr. Rogers, the acting teller of the Clearing House, testified, that he had occasionally paid transfer orders in money.

The appellee insists that the object of its third prayer as offered, was to obtain the Court's interpretation of the transfer order. In their view, it was not a bill of exchange, nor a check, nor other commercial paper, but an instrument *sui generis.* An effort had been made on the part of the appellant, to prove a custom and usage giving to such a transfer order the attributes and character of a check for so much money payable in legal tender notes.

From the testimony above cited, it is obvious, this prayer was not subject to the exception, that there was no evidence to which it was applicable; if there had been no evidence, such objection, not being raised at the time, would not now be tenable, and the modification of the prayer being in favor of the appellant, even if erroneous, would not be ground of appeal on its part.

That the prayer submitted a question of law to the jury, (if such was the fact,) is no longer a ground of reversal, "unless it appear from the record that an objection thereto for such defect was taken at the trial;" it does not appear to us, however, that any such question was submitted by the prayer as originally framed and submitted, or as modified by the Court.

The fifth prayer of the appellee (which is included in the appellant's third exception) is objected to on the ground that, even if the prayer was correct in the conclusion, (which is denied,) it was calculated to mislead the jury by its long recital of various circumstances, having no bearing on that conclusion.

This prayer predicates the appellee's right of recovery, upon the appellant's procuring the sum of $25,000, on the transfer draft, by using it contrary to the rules and regula-

tions of the Clearing House, with full notice that the same had been obtained of the appellee without payment.

Negativing the theory of agency, upon which the liability of the appellant was sought to be fixed in the first and second prayers, the appellee in this seeks to recover upon the implied obligation of the appellant to repay what it received without consideration; or, that the appellant, coming into possession of the sum of $25,000, belonging to the appellee, *ex æquo et bono*, was liable in this action for the same.

Much as the detail of immaterial facts in the formation of prayers is to be condemned and avoided, we cannot in this instance perceive that any of those enumerated have no relation to the conclusion, or are calculated to confuse or mislead the jury. The prayer might perhaps have been condensed, but as an epitome of the evidence on which the appellee based the proposition of law with which it concludes, it is not, in our opinion, justly subject to exception. The law of the prayer is, we think, thoroughly sustained by the decisions of this Court, as well as the authorities cited by the appellee. *Kennedy vs. The Balto. Ins. Co.,* 3 *H. & J.,* 367; *Vrooman vs. McKaig,* 4 *Md.,* 450. The action was an equitable action, in which the plaintiff might prove all equitable circumstances incident to his case, and recover any money in the hands of the defendant which, "*ex æquo et bono,*" belonged to the plaintiff.

The ninth prayer of the appellee, the granting of which, as modified by the Court, forms the last ground of the appellant's third exception, it is said, as originally drawn, referred to transfer orders paid for by the appellant by its *cashier's* check, as contradistinguished from those purchased by Bayne with *his own certified* check; and therefore introduced a new and immaterial issue, and could not properly be granted in that form; that the Court, whilst properly rejecting it, modified it so as to make it obnoxious to the objection, that it confounded the distinction between the different operations, and allowed the jury to draw conclusions as to the latter, which were only applicable to the former.

Much stress was laid in the argument by the counsel for the appellant on this branch of the case, to establish the position, that whilst purchases by means of the *cashier's* check of the apellant, might tend to prove agency in Bayne, *pro hac vice*, they had no such tendency, in relation to the tranfer order, the subject of the present suit.

Such an argument might be addressed to the jury, whose province it was to determine the question of agency *vel non* from all the circumstances; whether the change in the mode of dealing indicated a real change in the relation of the parties, was a question for the jury.

The Court could not assume to disconnect these transactions, merely from the difference in the details, and decide that those purchased with the cashier's check were on account of the appellant, and those otherwise purchased were not, but were on individual account.

Bayne testified, "my arrangement at that time with the Mechanics' Bank was, that they were to certify Bayne & Co's checks to be good to an amount any day of $30,000 of over draft, to be made good by 3 o'clock of the same day." * * * "That he was not instructed by the Mechanics' Bank on that day to get Clearing House funds. They did not know of it, but knew that he had to raise the Clearing House funds and would do it; it was his business to get what was needed."

The question was asked by the defendant's counsel, "Did the Mechanics' Bank ever authorize you to go out and get transfer orders on their account, for which they were to be liable?" To which he replied, "Yes, several times; sometimes, when witness went to get Clearing House funds, certain of the banks would not lend to brokers—would not give him the transfer orders, except the cashier's check of the Mechanics' Bank was left with them at the time; in such cases he would report the fact to the Mechanics' Bank, and that bank would then send its own cashier's check in payment. Other banks would take the certified check of Bayne & Co." He further testified, "that no officer of the Mechanics' Bank knew that

he was going to get the $25,000 transfer order from Gibson; that Bayne & Co. were over $83,000 at the Mechanics' Bank, and *they had to make their account good.*"

The ninth prayer of the appellee, as originally offered, applied to cases of this kind, in which the agent, although duly authorized to purchase for the Bank, could not accomplish his object without pledging the bank's credit; but the Court perceiving, it may be, that the case at bar was not included in that category, added the proviso, enlarging the application of the principle, *that ratification is equivalent to previous authority,* and emphatically declared that to "enable the jury to find a ratification under this instruction, they must find that Bayne bought *this draft* in the name and on the credit of the defendant, notwithstanding he may have had no instruction to do so, and that the defendant, with full knowledge of all the facts, *adopted* and *ratified his act.*"

The maxim, " *omnis ratihabitio mandato œquiparatur,*" could scarcely have been applied with more caution. The qualification by the Court of the appellee's ninth prayer was made for the benefit and protection of the appellant *"ex abundanti cautela.*" As we have before remarked of other prayers, it is not to be presumed after verdict, there was no evidence to warrant the instruction, not being specially excepted to on that account.

Finding no error in the several rulings of the Court below, the judgement will be affirmed.

*Judgment affirmed.*

STEWART, J., dissented from some of the conclusions of the majority of the Court.