## Case No. 11,761.

### RICH v. PARROTT et al.

[1 Spr. 358;[1] 37 Hunt, Mer. Mag. 448; 20 Law Rep. 135.]

District Court, D. Massachusetts. May, 1857.[2]

CHARTER PARTY—BALLAST—SELECTION OF—MANNER OF LOADING—MASTER—CONSIGNEE.

1. Under a charter-party for a voyage from Calcutta to Boston, by which the hirer agreed to furnish sufficient saltpetre or its equivalent, for ballast, the master has no right to require that the equivalent shall consist of sugar or rice, but the hirer may, at his election, furnish any article which is an equivalent, and answers the description in the charter-party.

2. It is for the master of the ship, and not the hirer, to determine where the different articles of merchandize offered shall be placed, and how proportioned.

3. If the hirer offer to furnish goods in sufficient quantities, of the various kinds required by charter-party, it is the duty of the master to make known to him what quantity of the several articles will be necessary to load the ship, as required by the charter-party.

4. If he omit to make that communication, the consequence of such neglect must fall upon his principal, and not upon the shipper.

5. A consignee, authorized to furnish a cargo under a charter-party, is not thereby authorized to change or waive any of its stipulations, or to make any agreement as to the manner in which the ship shall be loaded or ballasted.

[This was a libel by Abraham Rich against William F. Parrott and others for the breach of a charter-party.]

Samuel E. Guild, for libellant.

C. P. Curtis, Jr., for respondents.

SPRAGUE, District Judge. This is a cause of contract. In September, 1855, the libellant, by charter-party, let to freight the ship Martha to the respondent, for a voyage from Boston to Calcutta and back. The respondents were bound to furnish a full cargo at Calcutta and pay freight therefor, at the rate of $15 per ton. Among other things, it was stipulated that the respondent should furnish "sufficient saltpetre, or its equivalent, for ballast." The voyage was made, and the ship returned with a cargo to Boston. The libellant alleges that the respondents did not furnish sufficient saltpetre, or its equivalent,

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 11,760.]

for ballast, by reason whereof he was compelled to take ninety-two tons of stone ballast, and thereby lost the freight on that number of tons of saltpetre or other equivalent merchandize. In answer to this claim, the respondents admit that no saltpetre was furnished; but allege: First, that sufficient equivalent merchandize was furnished for ballast, and actually received, and taken on board, as cargo. Second, that if sufficient equivalent merchandize for ballast was not received by the libellant, it was through the neglect and fault of the libellant, and not of the respondents. Third, that the stone ballast, in the homeward voyage, performed the office of dunnage, and occupied no space that could have been filled, either by saltpetre or other merchandize, and did not displace any cargo.

By the true construction of the charter-party, the libellant was bound to receive such goods as the respondents should offer, it being at their option what kind to furnish, under certain limitations, only three of which have any application to the present controversy. viz: that the goods should be such as would fill the vessel; and secondly, such as would load the vessel to a fair and reasonable draft; and thirdly, sufficient saltpetre, or its equivalent. for ballast. It appears that the exportation of saltpetre, in American vessels, was then prohibited. owing to the war in Europe, and that the libellant demanded sugar or rice as equivalent for ballast, which the respondents refused to furnish. But they did furnish various articles, and among them linseed, buffalo hides, cowhides, gunny cloth, indigo, goatskins; and were ready to furnish a greater quantity of any or all of these articles, if the master had requested it.

The master was the agent of the libellant. The stowage of the cargo belonged to him, and not to the respondents. By the true construction of the charter-party, he had a right to require such merchandize as should load the vessel full, and to a fair and reasonable draft, and be sufficient for ballast. Subject to these and certain other conditions, not necessary to be here noticed, it was at the option of the shipper what goods to furnish, and it was the duty of the carrier to receive such as he should offer. It is insisted by the respondents, that the cargo which was actually brought home fulfilled all these conditions, and would, if properly stowed, have precluded the necessity of any stone for ballast. On this point the evidence is conflicting, but I think it preponderates in favor of the respondents. But if this be doubtful, it is clear that with the same kinds of goods in different quantities and proportions, the vessel might have been properly loaded, and within the requisitions of the charter-party, without any other ballast. It appears by the libellant's own testimony, that a part of the heavy goods were put between decks, and some of the light goods in the lower hold. It was for the master of the ship, and not

for the respondent, to know her construction and capacity, and where the different articles of merchandize should be placed, and how proportioned. And the respondents being ready to furnish goods which would fill the ship to a fair and reasonable draft, and ballast her, it was incumbent upon the master to make known to the respondents, what proportion and quantities of the several articles would be necessary to accomplish that purpose; and if he omitted to make that communication, the consequence of such neglect must fall upon his principal, and not upon the shipper.

The master testified that the consignee and agents of the respondents refused to comply with his requisition for sugar or rice for ballast, and told him he must keep in his stone ballast, and settle the matter in Boston. And it is insisted that this binds the respondents. But this declaration was evidently made upon the supposition, that the goods which he had to offer could not be made to perform the office of ballast, and as he could not furnish saltpetre, sugar or rice, the only alternative was to take stone, and it could not have been intended to release the master from his obligation to receive any goods which fulfilled the conditions of the contract. Nor does it appear that the consignee had any authority to do so. He was employed to furnish cargo under the charter-party. But there is no evidence that he was authorized to waive or change any of its stipulations, or to make any agreement as to the manner in which the ship should be loaded or ballasted. I think the third ground of the defence, also, is sustained by the evidence, that is, that the stone in the bottom of the vessel occupied no more space than was necessary to be devoted to dunnage. It is also quite certain that the cargo which was on board might have been so stowed as to dispense with a considerable part of the stone, if not wanted for dunnage, and thus the stone would have occupied no space where cargo could have been placed. A part of the heavy goods were in fact stowed between decks, and a part of the light in the lower hold. The defence is sustained, and the libel must be dismissed.

[On appeal to the circuit court, the above decree was affirmed. Case No. 11,760.]