JOSEPH H. LEINKAUF and LEOPOLD STRAUSS, Respondents, *v.* LOMBARD, AYRES & Co.

*Common carriers — shipping rule that to secure insurance the value of the goods must be stated — when an agent's act in disregard of it does not bind the carrier.*

Third parties cannot safely rely upon an agent's mere assumption of authority. The very fact that they are dealing with an avowed agent is sufficient to put them upon their guard, and where they have notice sufficient to put them upon inquiry that the agent is transcending the limits of his authority the principal is not bound by the act of the latter.

Where the facts are undisputed, and but a single inference can be drawn therefrom, the question of agency or of apparent authority is a question of law for the court; but, where the facts are disputed, or, although undisputed, different inferences may be drawn therefrom, the questions should be submitted to the jury.

Upon the question whether an agent, in making a particular contract on behalf of his principal, waived compliance, by the person with whom he contracted, with a condition imposed by the principal, it is improper to prove by third persons that the agent made declarations to them that he so transacted business.

Nor is such evidence competent for the purpose of impeaching the agent (he having previously, on cross-examination, denied making the declarations in question), as the inquiry relates to matters collateral to the issue, and the party asking the question on cross-examination is concluded by the answer of the agent thereto.

Where a common carrier made, at its home office in New York, a rule making the insurance by it of goods shipped by its boats conditional upon a declaration of the value thereof by the shipper, a general agent, acting under instructions in Mobile, whose principal duties are to solicit freight, collect freight bills and conduct generally the business of the branch office, has no authority to waive such condition in making a contract for his principal.

Circumstances considered under which it was held that shippers, notified of the rule by a circular of the common carrier, were chargeable as matter of law with knowledge of the limits of the agent's authority.

APPEAL by the defendant, Lombard, Ayres & Co., from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 28th day of January, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of New York, and also from an order bearing date the 23d day of January, 1896, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

· The plaintiffs are copartners engaged in business in the city of Mobile, Ala. The defendant is a domestic corporation, the proprietor of the New York and Mobile Steamship Company, engaged as a common carrier in transporting freight and passengers between the cities of New York and Mobile. The action is brought to recover the value of a shipment of goods by the steamship *Vidette,* on June 2, 1887, from New York to Mobile, which was lost in transit. The plaintiffs claimed to recover both on the ground of a breach by the defendant of a contract to insure the goods for the benefit of the plaintiffs, and for negligence in shipping them by an unseaworthy vessel. In support of the first ground, they introduced evidence of an agreement by the defendant to insure the goods for the plaintiffs' benefit for a sum equal to the invoice price plus ten per cent, and of a failure so to do. The answer admits the loss of the goods, but alleges that the agreement of the defendant to insure the goods was conditioned upon the plaintiffs declaring the value thereof at the time of shipment, and having the same stamped upon the bill of lading, with which condition the plaintiffs did not comply. At the time of the loss, one Chaudron was the general agent of the plaintiffs in the city of Mobile, and one Middleton was the general agent of the defendant in that city. The jury rendered a verdict for the plaintiffs for the invoice value of the goods, with the addition of ten per cent thereof and interest on the whole from the date of the loss.

Further facts are stated in the opinion.

*Benjamin F. Tracy,* for the appellant.

*Horace E. Deming* and *Joseph G. Deane,* for the respondents.

Barrett, J.:

The parties to this controversy concede that the verdict in favor of the plaintiffs proceeded upon what they term the insurance issue; and that the issue with regard to the alleged unseaworthiness of the vessel was not considered by the jury. An examination of the record satisfies us that this concession is accurate, and, consequently, if we find the exceptions upon the insurance issue to be well taken, we need not consider those relating to the defendant's alleged breach·

of duty as a common carrier. The verdict was for the precise amount which the plaintiffs claimed because of the alleged breach of the contract to insure; and this verdict could not consistently have been rendered upon the breach of duty claim, for the reason that the rule of damages laid down by the learned judge, as applied to the evidence upon the latter head, would have required a verdict for an entirely different sum. We shall proceed, therefore, to consider the questions arising upon the insurance issue, which alone were discussed by counsel. Upon that issue the judgment plainly rests.

We might at once, and quite briefly, dispose of this appeal by the statement of our opinion that the appellant's second point is clearly well taken, and that the testimony there considered was erroneously admitted. The case for the plaintiffs rested upon a question of veracity between their agent, Chaudron, and the defendant's agent, Middleton. Chaudron testified that Middleton expressly agreed to withdraw the plaintiffs from the general area of the defendant's instructions. Those instructions were that, thereafter, the defendant would insure the goods of shippers upon its line, free, provided the value of such goods was declared and stamped upon the bills of lading before the sailing of the vessel. Having learned of these instructions, Chaudron had an interview with Middleton upon the subject. Chaudron testified that at this interview he complained to Middleton of the proviso in question, and told him that the plaintiffs could not possibly guarantee any such declaration of value, and would, therefore, cease shipments over the defendant's line. He further testified that Middleton then told him not to pay any attention to the defendant's circulars; "that those instructions were intended for the small shippers," and that he, Middleton, would take the plaintiffs' insurance "on exactly the same terms in every respect as the Virginia line and the Savannah line." It was shown that these two lines insured free without any such condition or proviso as was specified in the plaintiffs' circulars. If Middleton was authorized to make this special agreement and thus to modify the general instructions contained in his principal's circular, then the case depended upon an issue of veracity between him and Chaudron. Middleton explicitly denied Chaudron's version of this interview. Upon cross-examination he was asked whether, in conversations with several other shippers in Mobile, he had not stated in

substance that he carried goods on his line on exactly the same terms as the Savannah line; that the rates or terms in regard to insurance on his line and on the Savannah line were the same, and that it was only a matter of convenience to his line to have shippers declare value, and that the defendant preferred it but did not exact it. Middleton denied that he had made any such statements. Thereupon these other shippers were called, and the plaintiffs were permitted to prove by them that Middleton *had* made substantially the statements in question. This testimony was clearly inadmissible. As evidence of independent bargains between such other persons and Middleton it was incompetent. It was *res inter alios acta*. That Middleton made these declarations to other shippers with regard to their business was not evidence that he made them to Chaudron with regard to his. That he made exceptional bargains with others was not evidence that he made an exceptional bargain of a similar character with Chaudron.

Not being competent as evidence of the special agreement testified to by Chaudron, this testimony bore simply upon Middleton's credibility. But it was likewise inadmissible for the purpose of impeachment, because the inquiry related to matters which were collateral to the issue, and consequently the plaintiffs were concluded by Middleton's answers, given in response to these particular questions. It is obvious that the admission of this testimony was highly prejudicial to the defendant. The contradiction of Middleton by several seemingly disinterested witnesses could not fail to settle the question of veracity as between himself and Chaudron. It follows, therefore, that a new trial must be ordered. There are other serious questions in the case which we do not deem it necessary to discuss, as they may not reappear in later stages of the litigation. But there is one prominent question which, as it underlies the case, we should consider, and that is the question whether Middleton was authorized to deviate from his instructions in the manner testified to by Chaudron. In other words, whether, assuming the truth of Chaudron's testimony, the special arrangement made between himself and Middleton was binding upon the defendant.

The defendant is a corporation organized under the laws of this

State. Its principal office is in the city of New York. Its business is the running of a line of steamers between this city and the city of Mobile. Middleton was the agent of the company in the State of Alabama. He had no power or authority except such as was delegated to him by the defendant. The rules and regulations under which shipments were to be made were issued by the home office of the company in this city. Mr. Best was the agent of the company here. He testified without contradiction that his duties were to make rates for the south-bound business, and that no person beside himself had authority to fix rates on south-bound business. Middleton testified, also without contradiction, that his duties were those of an agent under instructions, and that he received those instructions from New York where the main office of the company was. Chaudron testified that Middleton solicited freight and advertised the line; collected all the freight bills; made all the arrangements, and attended to all the affairs of the line so far as he had anything to do with the plaintiffs' firm, and that he (Chaudron) never heard of any one else in Mobile during the period in question representing the defendant's line. It is thus quite clear that Middleton had no authority to determine the rates for south-bound business, or to vary the rates determined upon at the home office. He was, as he said, an agent under instructions, and he had no authority to deviate from those instructions. We need not determine whether Middleton's agency should be classified as general or special. Assuming that he was the defendant's general agent in the State of Alabama, the real question is whether the fact that his actual authority was limited by his instructions must give way to what the plaintiffs contend was an apparent authority to contract as he saw fit. In other words, did the defendant hold Middleton out to the shippers of Mobile as an agent of its who had general authority to make rates or to deviate in a particular instance from its instructions upon the subject? There can be no debate about the rule of law. The question is as to its applicability to the facts before us. The rule undoubtedly is, that the principal is liable for the acts of his agent within the general scope of the latter's authority, and this includes not only what is expressly authorized, but also whatever is usually incident to the doing of what is so authorized, or is necessary for its performance. (1 Am. & Eng. Ency. of Law [2d ed.], 988, and cases there

cited.) The principal is also bound by the apparent authority which he has conferred upon the agent, or which he holds the agent out to the public as possessing. (Id. 989, and cases there cited.) Upon the other hand, third parties cannot rely upon the agent's mere assumption of authority. In dealing with an avowed agent, they are put upon their guard by the very fact. Where the agent transcends the limits of his authority, and the person with whom he deals has notice of this, sufficient to put him upon inquiry, he cannot charge the principal. (*Stainer* v. *Tysen*, 3 Hill, 279.) Applying these rules to the undisputed facts of this case, we think the plaintiffs had no right to rely upon Middleton's alleged assurance that the defendant's conditions did not apply to them. There is no evidence that the defendant ever authorized any deviation from its instructions as to rates or terms. Nor did Middleton upon any other occasion attempt to vary the rates or terms prescribed by the defendant's home office. He had neither actual nor apparent authority to make rates. He was not a universal agent nor an *alter ego*. He was the general agent of the company in a distant State. His principal duties were to solicit freight and to collect freight bills. His apparent authority never exceeded his actual instructions. No one dealing with him in Mobile could reasonably have imagined that he had independent power to determine the rates at which the defendant would transport goods, or to bind it by rules of his, and not of its making. When he informed shippers in Mobile of the company's rates he did not speak of his own rates, or of rates that he, as agent, had made, but impliedly of rates which had been communicated to him by his principal and which he was authorized by it to make.

Take Chaudron's testimony upon this head and this natural inference becomes apparent. "The first arrangement," he says, "that we had with Mr. Middleton was that we were to pay fifty-five cents freight. We were to insure our own open policy, and then refund and rebate half of the insurance. * * * It was during the month of January or February that *the rates were reduced* to fifty cents and half the insurance. * * * This arrangement of fifty cents and half the insurance lasted up to about the middle of March. * * * Then the rate was reduced to fifty cents net, *they paying all the insurance.* * * * In March I had a conversation with

Mr. Middleton in regard to this fifty cents and the paying of insurance. *He informed me of the reduction in rate* and stated that he was on a parity with the other lines. \* \* \* A change occurred in the middle of March; *the line* reduced the rate to fifty cents and paid all the insurance." Mr. Strauss' testimony is to the same effect. Speaking of an interview with Middleton he says: "In the course of conversation I inquired as to the rates, and in reply to this inquiry he stated to me that *they were* fifty-five cents a hundred; the question of insurance then arose and I asked him about this and he stated to me that *no definite arrangement had been made about insurance yet.*" He had a later conversation with Middleton. At this time Middleton put some slips on his desk, and he saw from one of them that "a declaration of values was required." "I then and there stated to Mr. Middleton," he adds, "that if this was *the rule of his line* he would certainly have to dispense with all shipments thereon."

It is clear upon this testimony, as well as upon all the other evidence in the case, that prior to the occasion under consideration Middleton never assumed an authority which he did not possess. No previous act of his, therefore, much less of the defendant's, could have led the plaintiffs to believe that he had power to deviate from explicit instructions with regard to so crucial a matter as the terms and conditions upon which the defendant was willing to transport goods. His agency was clearly subject to the rules and regulations under which the company was prepared to transact business. It was so subject, actually, and it was equally so subject, apparently. What, then, was presented to the plaintiffs' and Chaudron's minds when they received, examined, considered and debated the defendant's circulars, wherein free insurance was conditioned upon declaration of value before sailing of the steamer? Assuredly that such condition was, as Mr. Strauss suggested, the rule of the line. Assuredly, too, that such rule was an instruction to Middleton from his principal.

Chaudron himself says that Middleton referred to the circular as "those instructions." Here, then, the plaintiffs had full knowledge, *first,* of the terms upon which the defendant would accept goods for transportation; *second,* of the conditions upon which insurance should be free to the shipper; *third,* that such terms and con-

ditions had been conveyed by the defendant to its local agent, and constituted his instructions.

What shadow of reason had the plaintiffs, under these circumstances, for believing that Middleton had authority to vary his principal's terms and conditions, or to depart from its instructions with regard thereto? Clearly none. They discussed the condition with him and protested against it. They knew that it emanated from the highest authority. They knew that the agent could not overrule this authority. As prudent business men, they must have been well aware that he could not make an exception in their favor without consulting his principal. There was not a particle of evidence that Middleton had ever previously discriminated in favor of the plaintiffs or of any one else. If he had no apparent authority to make general rates or to prescribe general conditions, he certainly had no apparent authority to make special rates or to eliminate general conditions in special instances. The apparent authority invoked by the plaintiffs would seem to have no limit. It amounts to saying that the agent had apparent authority to do as he pleased; to conduct the defendant's business exclusively in his own way; to modify the defendant's terms at will; to nullify its rules; to transcend its instructions, and to make it odious, if he chose, by class favoritism. Whatever apparent authority the agent here possessed was expressly limited by precise instructions, not secret, but open and public, and of which the plaintiffs had full notice. With those instructions before them — considered and debated — how could the plaintiffs possibly have believed that the agent had authority to disregard them in their case? It is clear that any sensible or prudent business man under such circumstances would have said to Middleton: "Very well. Write to New York and bring me from there some assurance of what you promise."

It is contended that this question of apparent authority was at least one of fact for the jury. That would undoubtedly be so were there any evidence in the case from which even an inference of such authority could reasonably be drawn. In *Gulick* v. *Grover* (33 N. J. Law, 463) it was held that, where the facts are undisputed, the question whether an agent has the requisite authority to bind his principal is one of law for the court; and this is equally true whether such authority is sought to be sustained by a previous

authorization or by a subsequent ratification. In *Ye Seng Co.* v. *Corbitt* (7 Sawy. [U. S.] 368) it was held as matter of law that an agent for the charterers of a vessel to procure a cargo in a foreign port has no authority to modify or cancel the charter party of his principal. So in *Rich* v. *Parrott* (1 Sprague, 358) it was held as matter of law that a consignee authorized to furnish a cargo under a charter party is not thereby authorized to change or waive any of its stipulations or to make any agreement contrary thereto as to the manner in which the ship shall be loaded or ballasted. It is, as was said in *The Nat. Mechanics' Bank* v. *The Nat. Bank of Baltimore* (36 Md. 5), the province of the court " to decide whether there is any evidence tending to prove agency. Whether there be any evidence or not is a question for the judge; whether it is sufficient evidence is a question for the jury."

The ordinary rule as to what is a question of fact for the jury and what a question of law for the court is applicable to agency cases. (Mechem on Agency, § 105.) Where the facts are undisputed, and where but a single inference can be drawn therefrom, the question of agency, or of apparent authority, or of the authority which the principal holds the agent out to the world as possessing, is a question of law for the court. Where the facts on any of these heads are disputed, or where upon undisputed facts two inferences may be drawn therefrom, the question is one of fact for the jury under appropriate instructions. Applying these rules, it is clear that there was here no question for the jury. There was none as to the agency. That was conceded, and its terms were undisputed. There was none as to the apparent authority of Middleton. That was openly and avowedly the same as the actual authority — no more and no less. There was not a scintilla of competent evidence from which an inference could properly have been drawn of apparent authority to deviate from the defendant's rates, terms or conditions. Nor was there a scintilla of evidence that the defendant ever held Middleton out to the world as possessing authority to make independent terms or conditions with regard to the carriage of goods by it, or to deviate from its instructions upon that head. There certainly was none from which an inference could be drawn that Middleton possessed the authority to limit the company's publicly proclaimed rules, to confine those rules to a particular class of shippers

and to exclude another class entirely from their operation. We may add that there is no pretense that the disputed conversation between Chaudron and Middleton was ever acted upon by the plaintiffs or ratified by the defendant previous to the occasion in question. Indeed, we find that even upon the *Vidette* the plaintiffs had some goods which were insured free, because they had availed themselves of the condition in question and had declared valuation before the sailing of the vessel. We find, too, that, notwithstanding this alleged conversation, and the rights which it is claimed to have afforded them, the plaintiffs, upon the fourth of the following July, requested the defendant in writing to furnish them with printed circulars for distribution among their vendors. These printed circulars called urgently upon such vendors, when shipping goods to the plaintiffs at Mobile, to present bills of lading at the defendant's office in New York, and to have the invoice value of the goods (to be insured) stamped thereon before the sailing of the steamer. So determined was the defendant to enforce this condition that it printed these circulars at its own expense, and furnished them to its customers. Upon those furnished to the plaintiffs were printed these words :

"If you fail to attend strictly to the above (that is, to have the insurance stamped upon the bill of lading before the sailing of the vessel) we will hold you responsible if the goods are lost or damaged.
"LEINKAUF &amp; STRAUSS."

These circulars were furnished to the plaintiffs both at their New York office and their Mobile office. Even Chaudron admitted that some of these circulars — " quite a number of them " — were sent to the plaintiffs' store in Mobile (as far back as April), where they went to the shipping or order department. He thought he saw them there about the same time as the other circulars, which was in April, prior to the alleged conversation with Middleton.

It is apparent, upon all the facts, that the learned trial judge erred in declining to charge the jury that the plaintiffs had no right to accept, if they did accept, the assurance of Middleton that the circulars were intended only for small shippers and not for large shippers like the plaintiffs, and need not be regarded by them; and that if they acted upon such assurance they acted at their peril.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

RUMSEY, PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.