(17 App. Div. 408.)

## LOWENSTEIN v. LOMBARD, AYRES & CO.

(Supreme Court, Appellate Division, First Department. May 7, 1897.)

CORPORATIONS—AUTHORITY OF AGENT—NOTICE OF LIMITATION.

    A person contracting with a corporation through its agent is chargeable with notice of limitations of the agent's authority, where he had received a circular from the corporation, specifying the terms of its contracts.

Appeal from trial term, New York county.

Action by Louis Lowenstein against Lombard, Ayres & Co., a corporation, for the value of goods lost by the sinking of defendant's

ship.    From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for new trial, defendant appeals.    Reversed.

The plaintiff is the surviving partner of the firm of Wollner & Lowenstein, wholesale dealers in boots and shoes, at Mobile, Ala. The defendant is a domestic corporation, doing business and having its main office in the city of New York. In the year 1887 the defendant was engaged in operating a line of steamships between New York and Mobile. In June, 1887, 281 cases of boots and shoes, of the invoice value of $7,836.23, purchased by plaintiff's firm in Boston, were shipped on board the steamship Vidette, of this line, at New York, for transport to Mobile, and were never delivered; the evidence tending to show that the ship, after sailing, was caught in a storm in the Gulf of Mexico, with which it contended for three days, and was then abandoned by her officers and crew, and was lost. The steamship line was not separately incorporated, and neither its advertisements nor its bills of lading disclosed that the defendant was managing it; but on these, and on its receipts and letter heads as well, it was known as the "New York and Mobile Steamship Line." For example, the bill of lading delivered to the plaintiff's firm for the shipment made by it was printed with the following heading: "New York and Mobile Steamship Line. Agencies: W. J. Best, 12 Broadway, New York; Robert Middleton,. Mobile, Ala." Middleton was the agent at Mobile from the time the line began business, and alone represented the line there, his appointment having been made by the secretary of the defendant. Middleton communicated the rates and terms to Mobile shippers (among others, to the plaintiff); and in the advertisement the public were told: "For rates of freight and passage, apply to R. Middleton, Agent, Mobile. W. J. Best, Agent, No. 12 Broadway, New York." During the spring of the year 1887 the defendant operated two ships on its line, the Baker and the Vidette. It appears that at this time there were other lines by which goods were shipped from New York to Mobile, known as the Virginia, Tennessee & Georgia Air Line, and the Savannah Line. On or about the 15th of April, 1887, the defendant, in New York, determined that open policies of insurance should be issued, covering the cost of goods shipped by its line, and that the insurance effected by the steamship line should be free to all who, at the time of shipment, should declare the value of goods shipped in New York, and should stamp the value upon the bills of lading. Circulars to that effect were prepared in New York, and sent to Middleton, in Mobile, and were issued and distributed by him to the patrons of the line in that city. The advertisements in the Mobile Register from April 19, 1887, to June 18, 1887, contained, among other things, these words: "Insurance effected on open policy of line, before sailing of steamer, free." Circulars were prepared by the agent of the line in New York, and left from time to time with plaintiff's firm in Mobile. One of these contained, among other things, the following: "Insurance under line's open policy, from New York to Mobile, free, when valuation is declared before sailing of steamer." A slip attached to a letter from plaintiff's firm contains the following: "Insurance free when valuation is declared before sailing of steamer." It is not disputed that plaintiff's firm received these circulars, which were also sent to and received by the shippers of the goods in Boston. According to the testimony of the plaintiff, about the middle of May, 1887, an interview took place between Middleton and Mr. Wollner, of plaintiff's firm, in the presence of the plaintiff, at which, after Mr. Middleton had stated that he had called to solicit the shipping business of the firm, "Mr. Wollner explained to Mr. Middleton that the trouble about giving his line our business arose from the inequality in the terms and rates between his line and the other lines. He told Mr. Middleton that the other lines gave the same rates, and that insurance upon the goods was included therein. Mr. Middleton admitted that this had been the fact. * * * He said that he had, however, so arranged it that he could then take business on exactly the same terms and conditions with such competing lines; that there would be no difference between his line and the others; and that its freight rate would cover everything; and that the delivery of the goods would be guaranied. Mr. Wollner said our goods must be insured from Boston to Mobile, and asked Mr. Middleton if its proposed rate of freight

would cover insurance. Mr. Middleton stated that his rate was just like the rate of the other lines, and included everything." The version given by the plaintiff's shipping clerk of this interview, as to what was said about insurance, was: "Mr. Wollner said: 'What about that insurance?' And he said, 'I have got that all fixed and arranged.' He said, 'That has given me a great deal of trouble, and kept me from getting a good deal of business in Mobile, for not having that fixed before.' Mr. Wollner says, 'Why, if that is so, I will give you some business.' Mr. Wollner * * * says, 'My goods don't come from New York; they come from Boston.' * * * And Mr. Middleton says: '* * * The rate from Boston to Mobile is fifty cents a hundred, including insurance;' that 'we have got our line on the same basis now as the Savannah Line rate.' " Middleton, while admitting the interview, denied that he attempted to modify the terms of shipment as stated in the circulars, and stated that the conversation was a very general one, in which Mr. Wollner said "that the reason that he had never given us business before was that our rates were too high. Now that our rate from Boston was the same as the Savannah rate, he proposed giving us some business. I explained to him exactly how the business had to be done, which seemed to be satisfactory to him. * * * I told him I would call later in the afternoon with full shipping instructions, so that he could send them to the parties in Boston, which I did. He was not there on my second visit, and I left these slips with * * * the bookkeeper." There was also evidence by the defendant tending to show that all contracts for south-bound freight—that is, from Boston or New York to Mobile—were made in New York. The plaintiff proved the terms upon which the Savannah line carried goods from New York to Mobile, not only as to the rates of freight upon the line, but also showing that the insurance was free, without any declaration of value, and without stamping the value upon the bills of lading. The plaintiff was permitted to prove, against the defendant's objection, what Middleton said to other merchants. There was much other testimony adduced in support of and opposed to plaintiff's right to recover, which was placed on two grounds: First, upon the defendant's breach of contract to insure the goods shipped by its line; and, second, upon the defendant's breach of contract as a common carrier to deliver the goods at Mobile. At the close of the testimony, the jury brought in a sealed verdict, as follows: "The jury say that they find a verdict for the plaintiff in the sum of $8,619.85."

Argued before WILLIAMS, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

John A. Deady, for appellant.
Horace E. Deming, for respondent.

O'BRIEN, J.   While there is a sharp and irreconcilable conflict between the plaintiff and Middleton as to just what was said at the interview during which the contract was made, it having been by the jury resolved in plaintiff's favor, we must assume, in disposing of this appeal, the version given by the plaintiff and his witnesses to be the correct one.   In Leinkauf v. Lombard, Ayres & Co., 12 App. Div. 302, 42 N. Y. Supp. 391, where the action, as here, against the same defendant, was to recover the value of a shipment of goods made on the same steamship Vidette, which was lost in transit, much of the testimony included in the record in this case, and many of the questions now presented, were considered and disposed of.   The plaintiffs there claimed "to recover both on the ground of a breach by defendant of a contract to insure the goods for the benefit of the plaintiffs, and for negligence in shipping them by an unseaworthy vessel."   The respondent insists, however, that this case is to be distinguished in two aspects:   First, that the oral contract between plaintiff's firm and Middleton was not an "ex-

ceptional" one, by which the plaintiff's firm sought to secure different and better terms than were afforded by the usual contract with Mobile shippers, but was the line's usual contract made at this time, and expressly so stated by Middleton, and that plaintiff had the right to rely upon Middleton's representations; second, that the verdict was a general one, founded upon the whole case, and it is therefore to be assumed that the jury decided in plaintiff's favor, not only as to the failure to insure, but also upon the ground that the steamship was unseaworthy. An attempt is also made to distinguish the two cases in respect to evidence by third persons of declarations by the agent Middleton as to his manner of transacting business, which upon the former appeal was held to be incompetent.

Without going further, we might base our conclusion upon the ground that the respondent has failed to satisfy us that there is any distinction between the evidence thus introduced upon this trial and that which was expressly held in the Leinkauf Case to have been incompetent and prejudicial, and as alone requiring a reversal of the judgment. So, too, with respect to the form of the verdict. It is true that we have not upon this appeal the concession made in the Leinkauf Case, that the verdict proceeded upon the insurance issue. It appears here, however, as in that case, that the verdict was for the precise amount which the plaintiff claimed on the insurance issue; and, while the difference in the amount on the one ground and the other is not very large, the transportation charges being about $60, the verdict would still be for a different sum. Thus, upon the contract to insure, the judge instructed the jury that they might—

"Find a verdict in favor of the plaintiff for the sum of $13,072, that being the value of the goods lost, with interest from July 1, 1887. It is made up of the invoice price, which was $7,836.23, ten per cent. added, which makes $8,619.85, and interest on this gross amount from July 1, 1887, down to the present time; making in all, as I have stated, $13,072."

The judge further charged:

"If you find that there was no contract to insure, but that there was a failure upon the part of the defendant to perform its duty as common carriers, you may find a verdict in favor of the plaintiff for the value of the goods at the port of delivery, Mobile, on July 1, 1887, deducting any amount due for transportation."

As the latter was not the rule applied by the jury, and the amount was that which the court stated the plaintiff was entitled to recover upon the insurance issue, we must conclude that their verdict was not based upon the breach of duty claim.

The further contention that this was not an exceptional contract is also without force. It is not disputed that the plaintiff's firm received notice by the circulars, etc., of the conditions upon which the defendant would allow insurance free to shippers; and thus, as said in the Leinkauf Case:

"The very fact that they are dealing with an avowed agent is sufficient to put them upon their guard; and, where they have notice sufficient to put them upon inquiry that the agent is transcending the limits of his authority, the principal is not bound by the act of the latter."

45 N.Y.S.—19

It is true that in the Leinkauf Case the testimony was directed to showing that the parties, with express knowledge of this condition affixed to insurance, claimed to have contracted with Middleton to have the defendant waive it; whereas in this case there was no special mention made of a waiver of this condition, according to the version given by plaintiff of the interview between his partner and Middleton when, as claimed, the oral contract was made. As the other lines, however, did not require shippers at the time of shipment to declare the value of goods in order to obtain the benefit of insurance, and as the oral contract, as claimed by plaintiff, was that the defendant would receive the goods upon the same terms and conditions, necessarily it included the idea that the defendant would not exact the condition of requiring plaintiff to declare the value of the goods before shipment, or stamp the value upon the bills of lading. It will be noticed, therefore, that the terms and conditions accorded to plaintiff upon the shipment in question were the same as those of all the other lines, except the requirement that, in order to obtain the insurance free, the value should be stated before shipment, and stamped upon the bills of lading. In this respect we think the Leinkauf Case, upon its facts, was stronger in favor of the plaintiffs' recovery than in the case at bar, because in that case it was testified that this regulation or condition, after being fully discussed, and as the result of an agreement reached between the parties, was expressly waived in favor of Leinkauf; whereas here there was no discussion bearing specifically upon the point as to whether the defendant was to waive the regulation requiring the value to be given before shipment, the contention proceeding entirely upon the assumption that, as the regulation or condition was something which the defendant required, and which the other lines did not require, therefore, when the defendant entered into an oral contract to give the same terms as on the other lines, it was implied that it should impose no such exaction. It might well, however, give rise to a discussion whether the requirement of stating value was or was not a reasonable regulation, which it was incumbent upon the plaintiff's firm to observe in order to obtain the benefit of the oral contract which it made of getting the same terms and conditions as it would have secured if it had shipped by the other lines.

If, however, we regard this as not weakening in any way the plaintiff's claim, and assume that it makes his case as strong in this aspect as in the Leinkauf Case, we are brought to the same question there presented, as to whether an oral contract made with the agent at Mobile, which undertook to contract upon different terms and conditions from those contained in the notices sent from the defendant's main office, and which were received by the plaintiff and the shippers in Boston, was not one which put the plaintiff upon inquiry to determine the extent of Middleton's authority to vary, change, or set aside such conditions in favor of some or all shippers at Mobile. Whether we characterize the oral contract as an exceptional one or not, it is clearly one that was in contravention of the express instructions contained in the notices

sent from New York, and which, according to the evidence of the defendant, Middleton had no authority in any way to alter. It will be seen that we have proceeded in this discussion with a view to determining whether the Leinkauf Case was controlling, because, regardless of what may be the personal views of any member of this court, we are bound by that decision; and having been unable, upon examination, to find any facts so different in the two records as to justify our distinguishing the two cases upon the controlling facts and principles, we think, upon the authority of the Leinkauf Case, that this judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.