(22 Misc. Rep. 543.)

MINER v. EDISON ELECTRIC ILLUMINATING CO. OF NEW YORK.

(City Court of New York, General Term. February 23, 1898.)

1. AGENTS—AUTHORITY—NOTICE.
   When a person deals with an agent, it is his duty to ascertain that the agent has authority to do what he undertakes.

2. SALE—IMPLIED AUTHORITY.
   To justify a party's reliance on an implied authority of an agent to do a particular act, the act must be necessary to the execution of the duties delegated.

3. APPEAL—PROPOSED CASE—AMENDMENT.
   An exception in a proposed case to the denial of a nonsuit, asked on the ground that the evidence does not show a cause of action, raises a question of law, and serves as a notice to respondent of an intention to raise the question of error in the ruling excepted to, and puts on him the duty of adding by amendment any needed proof.

4. SAME—SUFFICIENCY OF CASE—EVIDENCE.
   Under Code Civ. Proc. § 1022, providing that the court or referee, on trial of the whole issue of fact, may file a decision stating concisely the grounds on which the issues have been decided, and direct judgment to be entered thereon, and that the defeated party may file an exception to said decision, and, on appeal from the judgment entered thereon, on a case containing exceptions, the appellate division shall review all questions of law and fact, there is no need, as to rulings on questions of law, that the case on appeal should affirmatively show that it contains all the evidence given on the trial.

5. SAME.
   Exceptions to rulings on questions of fact are not permitted under the Code, and, in order to review such rulings, it is indispensable that the case on appeal contain a certificate that it contains all the evidence.

Appeal from judgment on report of referee.

Action by Henry C. Miner against the Edison Electric Illuminating Company of New York for money paid out and expended. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before SCHUCHMAN and CONLAN, JJ.

Easton & Lewis, for appellant.
Howe & Hummel, for respondent.

SCHUCHMAN, J. The complaint herein alleges that during the month of November, 1892, at the special instance and request of the defendant, and upon defendant's agreement to reimburse the plaintiff therefor, this said plaintiff paid, laid out, and expended for and on behalf of said defendant the sum of $1,798.39. The answer of the defendant denies this allegation, and sets up a counterclaim of $1,270.53. On the trial the plaintiff admitted the counterclaim, and the referee found in favor of the plaintiff, and, making allowance for the interest on the respective claims, ordered judgment in plaintiff's favor for the difference, to wit, $596.69.

The evidence adduced by the plaintiff (he being the witness) shows: That the defendant, by its letter of January 12, 1892, signed by J. E. Sayles, general agent, addressed to the plaintiff, offered to furnish the latter an electric switch board for the New Fifth Avenue Theater, which offer was accepted by the plaintiff. That the arrangement evidenced by said letter was made by the plaintiff with the defend-

ant through but one man, Arthur Williams, defendant's representative. That plaintiff had numerous conversations with said Williams and with one Stephenson. That he (plaintiff) had had several business transactions with the defendant, and had always done all of them with Williams. That Williams introduced Stephenson to the plaintiff, saying:

"'This is our general superintendent, and he now takes hold of the matter. I withdraw, and whatever he does is just exactly the same as if you were doing it with me.' I [plaintiff] asked Stephenson what was the matter, and he said the walking delegate had told him that, if they went to work, he would call off the other men. I said to him: 'Well, what are you going to do about this? I have advertised to open the theater, and I am under heavy expense, and have everything ready, but without the switch board it is impossible for me to light my theater.' He says: 'Well, I will go down and see Mr. Bowker, and see what we can do.' Subsequently I received a letter from the Edison Company. It was dated May 12, 1892, and came, as near as I can remember, the very night after I had talked with Mr. Stephenson."

The letter of May 12, 1892, was addressed to the plaintiff, and signed by R. R. Bowker, first vice president of the defendant, and a part of it is as follows:

"We have delivered to you, as per our contract, a switch board, on which we have put our best workmen and our best work, which is probably, in fact, the finest switch board ever made for theatrical purposes, and on which we have expended very much more money than we had directly or indirectly undertaken to do. We are ready to put that switch board in place, or, to prevent inconvenience to you, we are ready to deliver it to you in its present condition, and leave to you the responsibility of placing it. We are not willing to resort to any subterfuge, such as subletting, to get out of the jurisdiction of the walking delegate, as that means only a renewal of like difficulties for you and for others from time to time."

Thus appears the bone of contention and the crucial point in this case, namely: The defendant having furnished a switch board, and all material necessary thereto, and employés at their disposal to put in the switch board, a walking delegate or union man threatened to call off all union mechanics, of whatever trade, working on the theater, if the defendant was allowed to put in the switch board. Plaintiff was apprehensive that that threat might be executed, and he could not get the theater ready for the opening day, previously fixed upon, and which accomplishment called for his utmost endeavor, inasmuch as he had everything arranged for the opening performance, and was under heavy expense from that day onward. The defendant contends that, in view of plaintiff's fear of difficulties with the labor union, they withdrew any objection on their part to plaintiff's having the board finished by other people, provided it was done at plaintiff's expense (Defendant's Exhibit 12, letter of August 3, 1892, signed by Bowker, addressed to plaintiff). Plaintiff, however, contends that Stephenson, on behalf of the defendant, agreed with him (the plaintiff) to let the H. Ward Leonard Company finish the board, against whose work the walking delegate had no objection, and that the defendant would pay said company therefor; to which contention the defendant replies that Stephenson had no authority from the defendant corporation to make any such agreement, and that such agreement, even if made by Stephenson, was not binding upon them in law.

As to Williams, plaintiff testifies, at folio 94, as follows:

"Mr. Williams negotiated this contract with me, and I had a number of interviews with him before it was signed, but I could not say how many. I have had a great deal of business with Mr. Williams. I did not know what position Mr. Williams held with the Edison Company at this time. I only knew that I did all my business with him. I never inquired of the officials of the defendant company as to his position, and I never consulted the by-laws or the minutes of the defendant company as to his authority. I only knew that he represented to me the Edison Company, and I always done business with him,—a great deal of business with the Edison Company."

As to Stephenson, the plaintiff testifies, at folio 96, as follows:

"With regard to the authority of Mr. Stephenson, I only know what Mr. Williams told me. Mr. Williams told me that Stephenson was the general superintendent. He had full authority in connection with putting in, the switch board, and whatever he says is the same as if it was him. I do not remember ever seeing or meeting Mr. Stephenson in connection with any other matter, until I met him that morning. It was the morning that I was telephoned for to come up to the theater that the walking delegate had stopped the work on the switch board. I think, the morning of the 12th of May, 1892."

And at folio 103 he further testified:

"I understood this letter of May 12th gave Mr. Stephenson authority to authorize me to employ outside contractors. I relied on Mr. Stephenson. Before Mr. Stephenson told me to employ the H. Ward Leonard Company, I had received that letter of May 12th."

And at folio 109 he testified as follows:

"When I saw Mr. Stephenson on the morning of the 14th, I certainly thought he had consulted with the officers of the defendant company. I don't think he said so. He simply told me to go ahead and make the contract."

This is substantially all the material evidence adduced by the plaintiff as his part of the case. Under this state of facts, the plaintiff rested his case, and the defendant moved for the dismissal of the complaint on three grounds: (1) That the plaintiff has failed to establish a cause of action; (2) that the alleged contract between the plaintiff and the defendant had not been proved; (3) that no authority on the part of any officer or agent of the defendant, the illuminating company, had been proved to make such a contract as has been alleged in the complaint. Motion was denied, and exception taken by defendant on each ground.

This was error. The motion should have been granted. There is no evidence that Stephenson was the lawfully authorized agent of the corporation defendant to contract with the plaintiff to the effect that the plaintiff was to have the board finished by the H. Ward Leonard Company, pay them therefor, and be reimbursed by the defendant. The rule of law is that, when a person deals with an agent, he must know that he deals with the power behind his agency, and it is then his duty, at his peril, to see to it that the act done by the agent is legally authorized by the power. A person dealing with an agent is bound to inquire into the extent of his authority, and ignorance of the agent's authority is no excuse. Leinkauf v. Lombard, Ayres & Co., 12 App. Div. 302, 42 N. Y. Supp. 391; Nester v. Craig, 69 Hun, 543, 23 N. Y. Supp. 948; Michael v. Eley, 61 Hun, 180, 15 N. Y. Supp. 890; Hurley v. Watson, 68 Mich. 531, 36 N. W. 726. There is no evidence that the corporation defendant ever

ratified any such contract as plaintiff alleged has been made by Stephenson, and there is no evidence that the defendant had any knowledge of such a contract, and there can be no ratification of an act of an agent without full knowledge of the facts which it is claimed are ratified. It seems that the plaintiff relied upon some implied authority possessed by Stephenson as a general superintendent, but the evidence does not show any such reliance. To justify a party's reliance upon some implied authority of an agent to do a particular act, assumedly in behalf of his principal, the act must be practically indispensable to the execution of the duties delegated. Bickford v. Menier, 107 N. Y. 490, 14 N. E. 438.

The evidence adduced in behalf of the defense did not supply the above defect in the plaintiff's case, but, on the contrary, it strengthened it. Williams testified that he was never general superintendent of the defendant; that he was superintendent of its underground department, and at one time was general inspector; that he never made any contract, but negotiated quite a number; that he did not make any contracts with Mr. Miner, the plaintiff, but that he negotiated two or three contracts with Mr. Miner. Stephenson testified that he was never general superintendent of the defendant; that he was superintendent of the installation department; that he never made any contracts, unless once in a while, perhaps, a verbal contract, which was confirmed by order from the office; and that it was no part of his duty to make contracts for the company. And the by-laws of the defendant corporation (Defendant's Exhibit 15) show that only the officers of the corporation were empowered to make contracts, and neither Stephenson nor Williams was such an officer.

The respondent's point, that this court cannot consider the facts on this appeal, because of there being no certificate that the case contains all the evidence given upon the trial, is not tenable. Section 1022 of the Code of Civil Procedure provides that the court or referee, upon the trial of the whole issues of fact, may file a decision, stating concisely the grounds upon which the issues have been decided, and direct the judgment to be entered thereon. In that case the defeated party may file an exception to said decision, and then, on an appeal from the judgment entered thereon, upon a case containing exceptions, the appellate division of the supreme court shall review all questions of law and of fact. The referee's decision in the case at bar is of such a nature and in such a form.

The exception taken to the denial of the motion for a nonsuit upon the ground that the evidence does not show a cause of action raised a question of law. This exception, appearing in the proposed case, serves as a notice to the respondent of an intention to raise the question of error in the ruling excepted to, and puts upon him the responsibility of adding by amendment any needed proof. As to rulings on questions of law, there is no need, therefore, that the case on appeal should affirmatively show that it contains all the evidence given upon the trial. Perkins v. Hill, 56 N. Y. 87; Porter v. Smith, 107 N. Y. 531, 14 N. E. 446.

But as to rulings on questions of fact, exceptions are not permitted under the present Code, and hence there is nothing to notify or

warn the successful party of his opponent's intention to ask the appellate court to review such finding, unless there is a statement in the case on appeal that it contains all the evidence; and, in that case, such a statement is indispensable.   Halpin v. Insurance Co., 118 N. Y. 165, 23 N. E. 482; Aldridge v. Aldridge, 120 N. Y. 614, 24 N. E. 1022.

Judgment appealed from reversed, order of reference discharged, and new trial granted, with costs to the appellant to abide the event.

CONLAN, J., concurs.